CONSTANGY, BROOKS, SMITH & PROPHETE LLP
ANDREA RAWLINS (SBN 253715)
arawlins@constangy.com
601 Montgomery Street, Suite 350
San Francisco, CA 94111
Telephone: (415) 918-3000

ROBERT L. ORTBALS, JR. (*Pro Hac Vice*)
rortbals@constangy.com
KATIE M. RHOTEN (*Pro Hac Vice*)
krhoten@constangy.com
680 Craig Road, Suite 400
St Louis, MO 63141
Telephone: (314) 338-3740
Facsimile: (314) 665-1707

*Attorneys for Defendant*
UNION PACIFIC RAILROAD COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN DONAHUE; JASON CAMPBELL; and JACOB GOSS,<br><br>    Plaintiffs,<br><br>    vs.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>    Defendant. | Case No. 3:21-CV-00448-MMC<br><br>**DEFENDANT UNION PACIFIC RAILROAD COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: September 9, 2022<br>Time: 9:00 a.m.<br>Dept.: Courtroom 7 – 19th Floor<br>Judge: Hon. Maxine M. Chesney<br><br>Complaint Filed: January 19, 2021 |

i

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S NOTICE OF    No. 3:21-CV-00448-MMC
MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>NOTICE OF MOTION AND MOTION</u>

TO: PLAINTIFFS JUSTIN DONAHUE, JASON CAMPBELL, JACOB GOSS, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on September 9, 2022, at 9:00 a.m., in Courtroom 7 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA, 94102, Defendant UNION PACIFIC RAILROAD COMPANY, ("Union Pacific" or "Defendant") will, and hereby does, move for summary judgment on Plaintiffs' remaining claims of disparate treatment (Count I) and disparate impact (Count II) in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA") asserted in their Complaint filed on January 19, 2021.

This Motion is made pursuant to Rule 56 of the Federal Rules of Civil Procedure, and will be made on the grounds that Plaintiffs, as a matter of law, have insufficient evidence to establish a *prima case* as to their remaining claims alleged in the Complaint; Union Pacific has meritorious defenses to each claim; and Plaintiffs fail, as a matter of law, to establish their entitlement to punitive damages based on the undisputed facts. Accordingly, Union Pacific moves this Court for an order pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment in its favor on the following issues:

<u>STATEMENT OF THE ISSUES</u>

<u>Issue No. 1:</u> Plaintiffs' claims for disparate treatment (Count I) and disparate impact (Count II) fail as a matter of law because they are precluded by the Federal Railroad Safety Act, 49 U.S.C. § 20100 *et seq*., ("FRSA") due to Plaintiffs' failure to petition the Federal Railroad Administration ("FRA") to review Union Pacific's respective decisions to deny their recertifications as a locomotive engineer (Plaintiff Goss) and conductors (Plaintiffs Campbell and Donahue) under the dispute resolution procedures contained in the FRA regulations.

<u>Issue No. 2:</u> Plaintiffs' claims for disparate treatment (Count I) and disparate impact (Count II) fail as a matter of law because they are time-barred and were not tolled after the

named plaintiffs moved for certification in *Harris v. Union Pacific R.R. Co.*, 329 F.R.D. 616 (D. Neb. 2019), *rev'd* 953 F.3d 1030 (8th Cir. 2020).

Issue No. 3: Plaintiffs' claim for disparate treatment (Count I) fails as a matter of law because they are not qualified to perform the essential functions of their respective jobs; Union Pacific can articulate a legitimate, non-discriminatory reason for its denial of Plaintiffs' FRA recertifications; and Plaintiffs cannot prove pretext.

Issue No. 4: Plaintiffs' claim for disparate impact (Count II) fails as a matter of law because Plaintiffs are not "qualified" individuals under the ADA, they only allege that Union Pacific "regarded" them as disabled, and Union Pacific's color vision screening protocols are job-related and consistent with business necessity.

Issue No. 5: Plaintiffs cannot establish their entitlement to punitive damages because Union Pacific did not act with "malice" or "reckless indifference" towards their federally-protected rights.

Dated: August 5, 2022

Respectfully submitted,
CONSTANGY, BROOKS, SMITH & PROPHETE, LLP


By:   */s/ Andrea Rawlins*
      Robert L. Ortbals, Jr.
      Andrea Rawlins
      Katie M. Rhoten
      Attorneys for Defendant
      UNION PACIFIC RAILROAD COMPANY

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S NOTICE OF   No. 3:21-CV-00448-MMC
MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

I.     INTRODUCTION                                                              1

II.    STATEMENT OF MATERIAL FACTS SUPPORTING
       SUMMARY JUDGMENT                                                          2

III.   ARGUMENT AND AUTHORITIES                                                  9

       A.  Plaintiffs' Remaining ADA Claims are Precluded by the FRSA.           9

       B.  Plaintiffs' Remaining ADA Claims are Time-Barred.                    11

           1.  Plaintiffs' Disparate Impact Claim was Abandoned by
               the *Harris* plaintiffs.                                         13

           2.  Plaintiffs do not fit within the Narrowed *Harris*
               Class Definition for Disparate Treatment.                        14

       C.  Plaintiffs' ADA Disparate Treatment Claim Still Fails as a Matter of Law.   16

           1.  A Fitness-For-Duty Determination is not Direct
               Evidence of Discrimination.                                      16

           2.  Plaintiffs Cannot Produce Indirect Evidence of Discrimination.   17

               i.   *Plaintiffs were not qualified under the ADA because
                    they could not satisfy the FRA's mandatory color-vision
                    standard for recertification.*                              18

               ii.  *Regardless, Union Pacific had Legitimate,
                    Non-Discriminatory Reasons for its Actions and
                    Plaintiffs Cannot Prove Pretext.*                           20

       D.  Plaintiffs' ADA Disparate Impact Claim Still Fails as a Matter of Law.    21

       E.  Plaintiffs' Claim for Punitive Damages also Fails as a Matter of Law.    24

IV.    CONCLUSION                                                               25

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S NOTICE OF       No. 3:21-CV-00448-MMC
MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Albertson's, Inc. v. Kirkinburg*, 527 U.S. 555, 577-78 (1999) ......................................... 18, 20, 23

*Amalgamated Transit Union Loc. 1309 v. Laidlaw Transit Servs., Inc.*, No. 05-CV-1199-IEG (CAB), 2010 WL 582134 at *8 (S.D. Cal. Feb. 11, 2010) ................................................ 16

*Arias v. McHugh*, No. CIV.2:09-690 WBS GGH, 2010 WL 2511175 at *12 (E.D. Cal. June 17, 2010) ............................................................................................................................. 17, 20

*Barrett v. Union Pac. R.R. Co.*, No. 19-cv-06377-CV, 2021 WL 233129, at *1 (N.D. Cal. Jan. 25, 2021) .................................................................................................................... 25

*Berg v. Calif. Horse Racing Bd.*, 419 F.Supp.2d 1219, 1228 (E.D. Cal. 2006) .......................... 17

*Bey v. City of New York*, 999 F.3d 157, 161-62, 168 (2d Cir. 2021) ............................................ 20

*Bohner v. Union Pac. R.R. Co.*, No. 4:19-cv-02581-SEP, 2021 WL 3363063, at *4 (E.D. Mo. Aug. 3, 2021) ....................................................................................................................... 17

*Boyd v. Fallbrook Union Elem. Sch. Dist.*, No. 18cv1816-LAB (KSC), 2019 WL 183506 at *2 (S.D. Cal. Jan. 11, 2019) ........................................................................................................ 17

*Brunskill v. Kansas City Southern Ry. Co.*, No. 06-00205-CV-W-REL, 2008 WL 413281 at *29 (W.D. Mo. Feb. 12, 2008) ................................................................................................... 20

*Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.,* 137 S.Ct. 2042, 2051-52 (2017) .................. 12

*Carballo v. Comcast, Inc.*, No. C-13-5572 MMC, 2015 WL 5257983, at *2 (N.D. Cal. Sept. 8, 2015) ................................................................................................................................ 9 n.7

*Carpenter v. Mineta*, 432 F.3d 1029, 1031 (9th Cir. 2005) .......................................................... 10

*Carrillo v. Union Pac. R.R. Co.*, No. EP-21-CV-00026-FM, 2021 WL 3023407 at *4-6 (W.D. Tex. July 16, 2021) .................................................................................................... 14, 21

*China Agritech, Inc. v. Resh,* 138 S.Ct. 1800 (2018) .................................................................. 12

*Christensen v. Carter's Retail, Inc.*, No. 8:20-cv-00776 JSL, 2021 WL 4932244, at *1 n. 1 (C.D. Cal. Oct. 21, 2021) ........................................................................................................ 13

*Coffey v. Norfolk S. Ry. Co.*, 23 F.4th 332, 340 (4th Cir. 2022) ................................................... 23

*Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345 (1983) ........................................................... 13

*Daniel v. Boeing Co.*, 764 F.Supp.2d 1233, 1240 (2011) ........................................................... 16

*E.E.O.C. v. Braun Elec. Co.*, No. 1:12-cv-01592-LJO-JLT, 2014 WL 356998, at *6, n. 2 (E.D. Cal., Jan. 24, 2014) ........................................................................................................... 24

*E.E.O.C. v. Creative Networks, LLC*, 912 F. Supp. 2d 828, 838 (D. Ariz. 2012) ....................... 16

*Fulbright v. Union Pac. R.R. Co.*, No. 3:20-CV-2392-BK, 2022 WL 625082 at *6 (N.D. Tex. Mar. 2, 2022) ................................................................................................................... 14, 21

*Harris v. P.A.M. Transp., Inc.*, 339 F.3d 635, 639 (8th Cir. 2003) ............................................. 19

*Harris v. Union Pacific R.R. Co.*, 329 F.R.D. 616, 628 (D. Neb. 2019) ....................................... 9

*Harris v. Union Pacific R.R. Co.*, 953 F.3d 1030, 1035-39 (8th Cir. 2020 ) ................................ 9

*Hawkins v. Schwan's Home Service, Inc.*, 778 F.3d 877, 895 (10th Cir. 2015) ........................... 19

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Herron v. Peri & Son's Farms, Inc.*, No. 3:13-cv-00075, 2014 WL 1917934 at *5 (D. Nev. May 13, 2014) ................................................................................................ 18

*In re Syntex Corp. sec. Litig.*, 95 F.3d 922, 936 (9th Cir. 1996) ................................. 15

*Jackson v. Union Pac. R.R. Co.*, No. 4:19-cv-00069-RGE-RAW, 2021 WL 1726895, at *11 (S.D. Iowa Mar. 29, 2021) ............................................................................ 17

*Johnson v. Bd. of Trustees of Boundary Cnty. Sch. Dis. No. 101*, 666 F.3d 561, 565 (9th Cir. 2011) ................................................................................................................ 18

*Johnson v. Ry. Express Agency*, 421 U.S. 454, 467 (1975) ......................................... 13

*Josephs v. Pac. Bell*, 443 F.3d 1050, 1053-1054 (9th Cir. 2006) ............................... 11

*Kolstad v. American Dental Ass'n*, 527 U.S. 526 (1999) ............................................. 24

*Krehbiel v. Union Pac. R.R. Co.*, No. 19-2002-JAR, 2020 WL 5503363, at *7-*8 (D. Kan. Sept. 11, 2020) .......................................................................................... 17

*McNelis v. Pa. Power & Light Co.*, 867 F.3d 411, 415-18 (3d. Cir. 2017) .................. 18, 19, 24

*Menominee Indian Tribe of Wis. v. United States*, 136 S.Ct. 750, 755-57 (2016) ....... 13

*New Oriental Educ. & Tech. Grp. Sec. Litig.*, 293 F.R.D. 483, 487 (S.D.N.Y. 2013) .............. 16

*Radford v. Union Here Local 2*, No. C-10-00745, 2011 WL 13376924 at *7 (N.D. Cal. June 29, 2011) ................................................................................................ 20

*Rawlings v. Apodaca*, 726 P.2d 565, 578 (Ariz. banc 1986) ...................................... 24, 25

*Rogers v. Or. Trail Elect. Consumers Coop., Inc.*, No. 3:10-CV-1337-AC, 2012 WL 1635127 at *12 (D. Or. May 8, 2012) ...................................................................... 16

*Sawtell v. E.I. du Pont de Nemours & Co.*, 22 F.3d 248, 253 (10th Cir. 1994).............. 15, 16

*Sharbono v. Northern States Power Co.*, 218 F.Supp.3d 1004, 1019 (D. Minn. 2016) .............. 21

*Simms v. DNC Parks & Resorts at Tenaya, Inc.*, No. 1:13-CV-2075 SMS, 2015 WL 1956441 at *3 (E.D. Cal. April 29, 2015) .................................................................. 11

*Smith v. Pennington*, 352 F.3d 884, 894 (4th Cir. 2003) ............................................ 15, 16

*Smithson v. Union Pac. R.R. Co.*, No. SA-21-CV—01225-XR, 2022 WL 1506288 at *3-4 (W.D. Tex. May 11, 2022)............................................................................................ 14

*Vaughn v. FedEx Freight, Inc.*, 421 F.Supp.3d 1302, 1310-12 (N.D. Ala. 2019)........... 21

*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063) (9th Cir. 2002) ................ 20, 21

*Weeks v. Union Pac. R.R. Co.*, No. 1:13-CV-1641 AWI JLT, 2017 WL 1740123, at *7 (E.D. Cal. May 3, 2017)............................................................................................ 10, 11

*Weeks v. Union Pac. R.R. Co.*, No. 1:13-CV-1641 AWI JLT, 2017 WL 714368, at *6-7 (E.D. Cal. Feb. 22, 2017) ......................................................................................... 10

*Weitzner v. Sanofi Pasteur Inc.,* 909 F.3d 604 (3rd Cir. 2018) ................................... 13

*Williams v. JB Hunt Trans. Inc.*, 826 F.3d 806, 811-13 (5th Cir. 2016) ...................... 19, 24

*Zarecor v. Morgan Keegan & Co.*, 801 F.3d 882, 888 (8th Cir. 2015)........................ 13

*Zeinalie v. Raytheon Co.*, 636, F.3d 544, 552 (9th Cir. 2011).................................... 20

**Statutes & Regulations**

29 C.F.R. § 1630.10(a) .......................................................................................... 22

29 C.F.R. § 1630.2(m) ........................................................................................... 18

29 C.F.R. Pt. 1630, App. to § 1630.2(m) ............................................................. 18

42 U.S.C. § 1981a(b)(1) ........................................................................................ 24

42 U.S.C. § 12101, *et seq.* ...................................................................................... ii

42 U.S.C. § 12111(8) ............................................................................................. 18

42 U.S.C. § 12112(a) ............................................................................................. 18

42 U.S.C. §12112(b)(6) ................................................................................... 21, 22

42 U.S.C. § 12113(a) ............................................................................................. 22

42 U.S.C. § 12117(a) ............................................................................................. 11

42 U.S.C. § 2000e-5(b) .......................................................................................... 11

42 U.S.C. § 2000e-5(e)(1) ..................................................................................... 11

42 U.S.C. § 2000e-5(3)(1) ..................................................................................... 11

42 U.S.C. §12113(a) .............................................................................................. 22,

49 C.F.R. § 240.121 ............................................................................................. 2, 3

49 C.F.R. § 240.121(c) ............................................................................................ 4

49 C.F.R. § 240.121(3) ............................................................................................ 3

49 C.F.R. § 240.401 (1993) ............................................................................... 6 n.3

49 C.F.R. § 240.403 (2009) ............................................................................... 6 n.3

49 C.F.R. § 242.1(a) ............................................................................................ 2, 3

49 C.F.R. § 242.117 ............................................................................................. 2, 6

49 C.F.R. § 242.117(h)(3) .................................................................................... 3, 4

49 C.F.R. § 242.117(j) ............................................................................................. 3

49 C.F.R. § 242.3(a) ............................................................................................. 2, 3

49 C.F.R. § 242.501 (2012) ............................................................................... 7 n.5

49 C.F.R. § 242.503 (2012) ............................................................................... 7 n.5

49 C.F.R. Pt. 240, App. F(2) ............................................................................... 3, 5

49 C.F.R. Pt. 240, App. F(4) ................................................................................... 3

49 C.F.R. Pt. 242, App. D(2) ............................................................................... 3, 5

49 C.F.R. Pt. 242, App. D(4) ................................................................................... 3

49 U.S.C. § 20100, *et seq.* ....................................................................................... i

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.     INTRODUCTION**

3

Plaintiffs Jason Campbell, Justin Donahue, and Jacob Goss worked for Defendant Union

4

Pacific Railroad Company as conductors and engineers—both of which are safety-sensitive

5

positions governed by the Federal Railroad Administration ("FRA"). Under the FRA's

6

regulations, conductors and engineers must pass a color vision screening test every 3 years in

7

order to be re-certified for their positions. The FRA's regulations specify certain tests that can be

8

used for the initial screening, and give the railroad's chief medical officer the discretion to

9

further evaluate individuals who fail the initial screening through a "field test" to determine if

10

they can satisfy the FRA's color vision standards.

11

Here, Plaintiffs each failed their initial 14-plate Ishihara exams during their FRA

12

recertification process and then also failed Union Pacific's color vision field test ("CVFT") that

13

was implemented in 2016—which has been observed and approved by the FRA. Because they

14

failed to satisfy the FRA's color vision standards, Union Pacific was required to deny their

15

respective FRA recertifications. Nonetheless, Plaintiffs now contend that Union Pacific

16

discriminated against them in violation of the Americans with Disabilities Act ("ADA") by

17

"regarding" them as disabled and wrongfully denying their FRA recertifications. Specifically,

18

Plaintiffs originally asserted ADA claims of disparate treatment (Count I), disparate impact

19

(Count II) and failure to accommodate (Count III). Because the Court dismissed Plaintiffs'

20

failure to accommodate claim as time-barred, only their disparate treatment and disparate impact

21

claims remain. But these, too, fail for a number of reasons: (1) Plaintiffs' remaining claims are

22

precluded by the FRSA; (2) Plaintiffs' remaining claims—like their failure to accommodate

23

claim—are time-barred; (3) Plaintiffs cannot establish they were qualified for their positions or

24

create a genuine dispute of fact as to whether Union Pacific's actions were pretextual; and (4)

25

Union Pacific's color vision screening protocols are job-related and consistent with business

26

necessity. Moreover, if the Court determines that any of Plaintiffs' claims should survive

27

28

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S NOTICE OF     No. 3:21-CV-00448-MMC
MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

summary judgment, they cannot demonstrate their entitlement to punitive damages. For these reasons and as discussed further below, Union Pacific is entitled to summary judgment on Plaintiffs' remaining ADA claims of disparate treatment and disparate impact; and they should be dismissed with prejudice.

## II.   STATEMENT OF MATERIAL FACTS SUPPORTING SUMMARY JUDGMENT

<u>About the Parties:</u> Headquartered in Omaha, Nebraska with approximately 30,000 employees, Union Pacific is an interstate Class I freight railroad linking 23 states in the western two-thirds of the U.S. by rail. Fields Decl., ¶¶ 4-5. At all times relevant in this action, Union Pacific maintained an Equal Employment Opportunity and Affirmative Action Policy prohibiting discrimination, retaliation, and harassment on the basis of disability or any other protected status. Rhoten Decl., ¶ 4, Ex. A, Union Pacific EEO/Affirmative Action Policy.

Goss began working for Union Pacific in September 2003 as a brakeman, and held the positions of brakeman, conductor and engineer between 2003 and 2016. *Id*., ¶ 5, Ex. B, Goss HR Report. Campbell began working for Union Pacific in March 2004 as a brakeman, and held the positions of brakeman and conductor between 2004 and 2018. *Id*., ¶ 6, Ex. C, Campbell HR Report. Donahue began working for Union Pacific in January 2006 as a brakeman, and held the positions of brakeman and conductor between 2006 and 2017. *Id*., ¶ 7, Ex. D, Donahue HR Report.

<u>FRA Regulations:</u> As conductors and engineers, Plaintiffs held safety-sensitive positions that are governed by the Federal Railroad Safety Act ("FRSA") and accompanying regulations implemented by the Federal Railroad Administration ("FRA")—both of which are binding on Union Pacific. *See Id*., ¶ 8, Ex. E, Trainman Job Description Brief; *Id*., ¶ 9, Ex. F, Engineer Job Description Brief; 49 C.F.R. § 242.3(a). As part of its comprehensive regulatory framework aimed at improving railroad safety, the FRA requires all conductors and engineers to meet certain color vision standards in order to be certified and re-certified to hold these positions. *See* 49 C.F.R. §§ 240.121, 242.1(a), 242.117. Specifically, engineers and conductors are required to

1   pass a vision examination during their certification and recertification process that tests their

2   ability to recognize and distinguish between colored railroad wayside signals. 49 C.F.R. §§

3   240.121, 242.1(a), 242.117(h)(3), 242.3(a); Pt. 240, App. F(2); Pt. 242, App. D(2)).

4        The FRA's regulations identify the 14-plate Ishihara test as an acceptable method for

5   determining whether an individual has the requisite ability to recognize and distinguish between

6   the colors used as signals in the railroad industry. §§ Pt. 240, App. F(2); Pt. 242, App. D(2). If a

7   conductor or engineer fails the 14-plate Ishihara exam, FRA regulations *allow* them to be further

8   evaluated by the railroad's medical examiner utilizing a color vision field test ("CVFT"). §§

9   240.121(e), 242.117(j), Pt. 240, App. F(4); Pt. 242, App. D(4). FRA regulations *do not* describe

10  how a CVFT is to be conducted—and give the railroad discretion to develop and implement a

11  field test. *Id.* Moreover, the FRA's regulations state their intent "is *not* to provide an examinee

12  with the right to make an indefinite number of requests for further evaluation, but to provide an

13  examinee with at least one opportunity to prove that a … vision test failure does not mean the

14  examinee cannot safely perform as a [conductor or engineer]." *Id.* (emphasis added).

15       <u>Union Pacific's Previous CVFT:</u> In 1999, Union Pacific implemented a CVFT wherein

16  the examinee was presented with 10 wayside signal configurations in a preset order. Rhoten

17  Decl., ¶ 10, Ex. G, NTSB Goodwell Report, p. 30. According to Goss, the previous CVFT

18  consisted of interpreting approximately 10 colored wayside signals on a portable 3-mast signal.

19  *Id.*, ¶ 11, Ex. H, Goss Dep., 114:25-115:12. Goss described the signal as having 3 vertical signal

20  indications similar to a traffic light and testified that the top, middle and bottom lights were

21  always the same color—thereby allowing him to identify the colors of the signals by position, as

22  opposed to his ability to correctly interpret the colors of the signals. *Id.*, 157:8-159:1.

23       <u>The Goodwell, Oklahoma Collision:</u> In June 2012, 2 Union Pacific trains traveling in

24  opposite directions collided head-on in Goodwell, Oklahoma—killing 2 engineers and 1

25  conductor, and causing approximately $14.8 million in damage. *Id.*, ¶ 10, Ex. G, NTSB

26  Goodwell Report, p. 44. After its investigation, the NTSB concluded that one of the probable

27

28

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S NOTICE OF     No. 3:21-CV-00448-MMC
MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

1    causes of the collision was the eastbound train engineer's inability to see and correctly interpret

2    colored wayside signals. *Id.*, p. 44. The engineer in question had failed his Ishihara exam in

3    2009, but was granted his FRA recertification after passing Union Pacific's CVFT that had been

4    in place since 1999. *Id.*, p. 22. After conducting its accident investigation and reviewing the

5    CVFT taken by the eastbound engineer, the NTSB concluded Union Pacific's CVFT failed to

6    ensure that its employees had adequate color vision acuity to work in safety-sensitive positions;

7    and recommended that Union Pacific replace it. *Id.*, p. 22.

8         The FRA's 2015 Publications: In March 2015, the FRA published a report affirming that

9    normal color vision was necessary for certain railroad employees—even if the signals being

10   interpreted were "completely redundant with regard to signal color." Rhoten Decl., ¶ 12, Ex. I,

11   March 2015 FRA Report. The report also concluded that railroad employees with color vision

12   deficiencies still "have a much higher relative error risk than employees with normal color

13   vision" when interpreting redundant signals. *Id.*

14        In November 2015, the FRA issued interim guidance in response to the Goodwell

15   collision to clarify the vision testing and certification regulations for conductors and engineers.

16   *Id.*, ¶ 13, Ex. J, November 2015 FRA Guidance. As stated in the interim guidance, the "FRA's

17   locomotive engineer and conductor qualification certification rules grant railroad medical

18   examiners discretion in determining the methods and procedures the medical examiner will use

19   to further evaluate persons who do not meet the vision thresholds [of the initial Ishihara exam] in

20   49 C.F.R. §§ 240.121(c) and 242.117(h)." *Id.*, p. 3. Regarding CVFTs, the FRA (1) suggested

21   they be "valid, reliable, and comparable," (2) emphasized they must "reasonably match actual

22   operating or working conditions," and (3) stated they may be performed while conductors stand

23   "on the ground at distances from a signal or other object that the person must see and recognize

24   to perform safely." *Id.*, pp. 5-6.

25        The Light Cannon CVFT: In response to the NTSB's 2013 Goodwell report and the

26   FRA's 2015 publications, Union Pacific began developing a revised CVFT for its locomotive

27

28
                                                4

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S NOTICE OF      No. 3:21-CV-00448-MMC
MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

engineers and conductors. Holland Decl., ¶¶ 5-6. Specifically, Union Pacific developed a new test signal device known as the "Light Cannon" to address the issues raised by the NTSB in its 2013 report and to match actual operating and working conditions for railroad workers responsible for identifying colored wayside signal lights. *Id.*, ¶ 7; Rhoten Decl., ¶ 14, Ex. K, Doerr Dep., 103:3-23. In 2016, Union Pacific implemented a revised CVFT utilizing the Light Cannon and revised testing protocols to comply with the NTSB and FRA's recommendations. Holland Decl., ¶¶ 6-7. To administer the test, the Light Cannon was placed a quarter mile away from the examinee and (after verifying the device was working properly) the examinee was shown 20 separate signal lights for 3 seconds each. Rhoten Decl., ¶ 15, Ex. L, Holland Dep., 195:7-19. After viewing a signal for 3 seconds, the nurse administering the test would record the examinee's answer identifying that signal light. *Id.*

The CVFT implemented by Union Pacific in 2016 complied with the FRA's suggested best practices by (1) using signals that are substantially similar to those being used in the field; (2) conducting the test at a distance that approximates the distance engineers and conductors need to be able to recognize signals; (3) removing positional cues (like those present in Union Pacific's former CVFT); and (4) presenting a proper number of individual signal lights to the examinee. *Id.*, ¶ 15, Ex. L, Holland Dep., 141:16-142:20. After observing the revised CVFT and testing protocol, the FRA represented it complied with the NTSB and FRA's color-vision testing recommendations. *Id.*, ¶ 14, Ex. K, Doerr Dep., 97:21-98:17. In 2017, the FRA concluded the Light Cannon field test was "an adequate field test as contemplated by [49 C.F.R. Pt. 240, App. F, ¶ 4]." *Id.*, ¶ 14, Ex. M, *In Re Pendergraft*, p. 3.[1] In 2018, the FRA concluded the Light Cannon

---

[1] The *Pendergraft* decision evaluated the Light Cannon CVFT issued to Pendergraft in September 2016—which is the same CVFT administered to Plaintiffs Campbell (May 2018), Donahue (May 2017) and Goss (May 2016). Rhoten Decl., ¶ 14, Ex. K, Doerr Dep., 80:9-81:2 (confirming that earlier iterations of Light Cannon CVFT before it was finalized were not used for employee FRA certifications); *Id.*, ¶ 22, Ex. S, Campbell May 2018 CVFT Packet; *Id.*, ¶ 23, Ex.T, Donahue May 2017 CVFT Packet; *Id.*, ¶ 20, Ex. Q, Goss May 2016 CVFT Packet.

1   field test "was in accordance with [49 C.F.R. § 242.117 and 49 C.F.R. Pt. 242, App. D]." *Id.*, ¶

2   17, Ex. N, *In Re Marlow*, p. 4.

3       <u>Goss' Failed CVFT:</u> On May 19, 2016, Goss failed his Ishihara exam by missing 4 out of

4   14 plates during his FRA recertification. *Id.*, ¶ 18, Ex. O, Goss May 2016 Ishihara. As a result,

5   he was removed from service as an engineer and placed in deferral status pending his completion

6   of Union Pacific's CVFT. *Id.*, ¶ 19, Ex. P, Goss May 2016 Vision History. When completing his

7   vision history form that same day, Goss reported failing the Ishihara exam "inconsistently" in the

8   past but passing Union Pacific's previous CVFT.[2] *Id.* Goss proceeded to fail the Light Cannon

9   CVFT on May 24, 2016—missing 2 out of 20 signals. *Id.*, ¶ 20, Ex. Q, Goss May 2016 CVFT

10  Packet, p. 1.

11      Based on his Ishihara exam failure and Union Pacific's CVFT, Union Pacific's Chief

12  Medical Officer Dr. John Holland determined that Goss did not satisfy the FRA's requirements

13  for recertification as an engineer. Holland Decl., ¶¶ 9-10; Rhoten Decl., ¶ 21, Ex. R, Goss May

14  2016 FFD Memorandum. Accordingly, Dr. Holland issued Goss a pending Notification of FRA

15  Certification Denial on May 25, 2016 and he was assigned permanent restrictions prohibiting

16  him from holding any positions requiring the accurate identification of colored railroad wayside

17  signals. Holland Decl., ¶ 10 Ex. 2, Goss May 2016 FRA Certification Denial; Rhoten Decl., ¶ 21,

18  Ex. R, Goss FFD Memorandum. Goss did not appeal the denial of his FRA recertification to

19  Union Pacific, nor did he petition the FRA to have the Locomotive Engineer Review Board

20  ("LERB") review Union Pacific's denial of his recertification under the FRA's dispute resolution

21  procedures.[3] Holland Decl., ¶ 11; McClelland Decl., ¶¶ 8-9.

22  _____

23  [2] For example, Goss failed the Ishihara exam during his FRA recertification in May 2010 by
24  missing 4 out of 14 plates, and obtained his FRA recertification after passing Union Pacific's
    previous CVFT. Rhoten Decl., ¶ 24, Ex. U, Goss May 2010 Ishihara; *Id.*, ¶ 25, Ex. V, Goss May
25  2010 CVFT.

26  [3] In 2016, any engineer (including Goss) who was denied recertification by Union Pacific had
    180 days following the denial to file a petition asking the FRA to review Union Pacific's
27  decision. 49 C.F.R. § 240.403 (2009). The FRA delegated initial responsibility for resolving
    these disputes to the LERB. § 240.401 (1993).

28

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S NOTICE OF      No. 3:21-CV-00448-MMC
MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

Donahue's Failed CVFT: On May 3, 2017, Donahue failed his Ishihara exam by missing 2 out of 14 plates during his FRA recertification. Rhoten Decl., ¶ 26, Ex. W, Donahue May 2017 Ishihara. As a result, he was removed from service as a conductor and placed in deferral status pending his completion of Union Pacific's CVFT. *Id.*, ¶ 27, Ex. X, Donahue May 2017 Vision History. When completing his vision history form on May 17, 2017, Donahue reported having "difficulty" when taking the Ishihara exam but maintained he did not have problems identifying signals.[4] *Id.* Donahue proceeded to fail the Light Cannon CVFT on May 22, 2017—missing 2 out of 20 signals. *Id.*, ¶ 23, Ex. T, Donahue May 2017 CVFT Packet, p. 5.

Based on his Ishihara exam failure and Union Pacific's CVFT, Dr. Holland determined that Donahue did not satisfy the FRA's requirements for recertification as a conductor. Holland Decl., ¶ 12; Rhoten Decl., ¶ 28, Ex. Y, Donahue May 2017 FFD Memorandum. Accordingly, Dr. Holland issued Donahue a pending Notification of FRA Certification Denial on June 5, 2017 and he was assigned permanent restrictions prohibiting him from holding any positions requiring the accurate identification of colored railroad wayside signals. Holland Decl., ¶ 13, Ex. 3, Donahue June 2017 FRA Certification Denial; Rhoten Decl., ¶¶ 28-29, Ex. Y, Donahue FFD Memorandum; Ex. Z, Donahue Restriction Form. Donahue appealed the denial of his FRA recertification to Union Pacific but did not petition the FRA to have the Operating Crew Review Board ("OCRB") review Union Pacific's denial of his recertification under the FRA's dispute resolution procedures.[5] Holland Decl., ¶ 12; McClelland Decl., ¶¶ 8-9.

---

[4] For example, Donahue failed the Ishihara exam during his pre-placement vision exam in January 2006 and during his FRA recertification in March 2011. Rhoten Decl., ¶¶ 30-31, Ex. AA, Donahue January 2006 pre-placement assessment, Ex. BB, Donahue March 2011 Ishihara. After failing the Ishihara in March 2011, Donahue obtained his FRA recertification after passing Union Pacific's previous CVFT.  Doc. 1, ¶ 32.

[5] In 2017 and 2018, any conductor (including Donahue and Campbell) who was denied recertification by Union Pacific had 120 days following the denial to file a petition asking the FRA to review Union Pacific's decision. 49 C.F.R. § 242.503 (2012). The FRA delegated initial responsibility for resolving these disputes to the LERB. § 242.501 (2012).

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S NOTICE OF   No. 3:21-CV-00448-MMC
MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>Campbell's Failed CVFT</u>: On April 30, 2018, Campbell failed his Ishihara exam by missing 5 out of 14 plates during his FRA recertification. Rhoten Decl., ¶ 32, Ex. CC, Campbell April 2018 Ishihara. As a result, he was removed from service as a conductor and placed in deferral status pending his completion of Union Pacific's CVFT. *Id.*, ¶ 33, Ex. DD, Campbell May 2018 Vision History. When completing his vision history form on May 8, 2018, Campbell reported "yes" in response to whether he had "color blindness or color vision deficiency," and reported failing the Ishihara exam 3 years prior during his FRA recertification before passing Union Pacific's previous CVFT.[6] *Id.* Campbell proceeded to fail the Light Cannon CVFT on May 21, 2018—missing 3 out of 20 signals. *Id.*, ¶ 22; Ex. S, Campbell May 2018 CVFT Packet, p. 2.

Based on his Ishihara exam failure and Union Pacific's CVFT, Dr. Holland determined that Campbell did not satisfy the FRA's requirements for recertification as a conductor. Holland Decl., ¶ 14; Rhoten Decl., ¶ 34, Ex. EE, Campbell May 2018 FFD Memorandum. Accordingly, Dr. Holland issued Campbell a pending Notification of FRA Certification Denial on May 22, 2018 and he was assigned permanent restrictions prohibiting him from holding any positions requiring the accurate identification of colored railroad wayside signals. Holland Decl., ¶ 15, Ex. 4, Campbell May 2018 FRA Certification Denial (pending), Rhoten Decl., ¶¶ 34, 37, Ex. EE, Campbell May 2018 FFD Memorandum; Ex. HH, Campbell June 2018 Restriction Form. Campbell appealed the denial of his FRA recertification to Union Pacific but not to the OCRB. Holland Decl., ¶ 16; McClelland Decl., ¶¶ 8-9. After Campbell's appeal to Union Pacific was denied, Dr. Holland issued him a final Notification of FRA Certification Denial on June 7, 2018. Rhoten Decl., ¶ 16, Ex. 5, Campbell June 2018 FRA Certification Denial (final).

<u>The *Harris* Class Action</u>: On February 19, 2016, Quinton Harris and five other named plaintiffs filed an amended complaint against Union Pacific asserting individual and class claims

---

[6] For example, Campbell failed the Ishihara exam during his FRA recertification in July 2015 by missing 2 out of 14 plates, and obtained his FRA recertification after passing Union Pacific's previous CVFT. Rhoten Decl., ¶¶ 35-36, Ex. FF, Campbell July 2015 Ishihara, Ex. GG, Campbell July 2015 CVFT.

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S NOTICE OF        No. 3:21-CV-00448-MMC
MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

alleging disability discrimination based on disparate treatment (Count I), disparate impact (Count II), unlawful medical inquiries (Count III), and failure to accommodate under the ADA (Count IV). *See Id.*, ¶ 38, Ex. II, *Harris* First Am. Compl., ¶¶ 136-163. The amended complaint described the proposed class as:

> Individuals who were removed from service over their objection, and/or suffered another adverse employment action, during their employment with Union Pacific *for reasons related to a Fitness-for-Duty evaluation* at any time from 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination to the resolution of this action.

*Id.*, ¶ 116 (emphasis added). On August 17, 2018, the named plaintiffs moved for class certification but narrowed the description of the proposed class to:

> All individuals who have been or will be subject to a fitness-for-duty examination *as a result of a reportable health event* at any time from September 18, 2014 until the final resolution of this action.

*Id.*, ¶ 39, Ex. JJ, *Harris* Mot. Class Certification p. 1 (emphasis added); *Id.*, ¶ 40, Ex. KK, *Harris* Mem. Law in Supp. Mot. Class Certification, p. 22, n.5. Further, the named plaintiffs only sought class certification with respect to "Count I, ADA disparate treatment, of the Amended Complaint[.]"*Id.*, Ex. JJ, p. 22. They did not move for certification on any other counts in the amended complaint—including *disparate impact*, unlawful medical inquiries, and *failure to accommodate*. *See Id.*, *passim*.

On February 5, 2019, the district court granted plaintiffs' motion for class certification. *Harris*, 329 F.R.D. at 628. On March 24, 2020, the Eighth Circuit Court of Appeals reversed class certification and ordered the class be de-certified. *Harris,* 953 F.3d at 1035-39.

## III.   ARGUMENT AND AUTHORITIES[7]

A.   <u>Plaintiffs' Remaining ADA Claims are Precluded by the FRSA.</u>

---

[7] Union Pacific incorporates the summary judgment standard stated by this Court in *Carballo v. Comcast, Inc.*, No. C-13-5572 MMC, 2015 WL 5257983, at *2 (N.D. Cal. Sept. 8, 2015).

1    Under the FRSA, the FRA "has issued administrative rules regarding [] the training and

2    certification of locomotive engineers [and conductors]" for the purpose of ensuring "that

3    locomotives are only operated by qualified and safe engineers [and conductors]." *Weeks v. Union*

4    *Pac. R.R. Co.*, No. 1:13-CV-1641 AWI JLT, 2017 WL 1740123, at *7 (E.D. Cal. May 3, 2017)

5    (quoting *Carpenter v. Mineta*, 432 F.3d 1029, 1031 (9th Cir. 2005)); *see also* 49 C.F.R. Part 240.

6    "The FRA does not actively participate in engineer [or conductor] testing or certification, but

7    administers the regulations through approval and monitoring of individual railroads' programs,

8    including their training and testing regimens." *Id.*

9    Because the regulations were not intended to impact a railroad's relationship with its

10   employees, "the FRA has a dispute resolution process in which each person denied engineer [or

11   conductor] certification may obtain a fresh determination by the FRA of whether the railroad's

12   decision was correct." *Id.* (quotation omitted). Specifically, "*[a]ny person* who has been …

13   denied recertification … and believes that a railroad incorrectly determined that he or she failed

14   to meet the qualification requirements of this regulation … may petition the FRA to review the

15   railroad's decision." *Weeks*, 2017 WL 1740123, at *7 (quoting 49 C.F.R 240.401(a)); *see also* §

16   242.501 (stating FRA dispute resolution process for conductors).

17   In *Weeks*, Union Pacific successfully opposed the plaintiff's motion for leave to amend

18   his complaint on the grounds that adding an ADA claim would be futile because the plaintiff

19   failed to exercise his rights under the FRA's dispute resolution process after Union Pacific

20   denied his engineer recertification. 2017 WL 714368, at *6-7. On reconsideration, the *Weeks*

21   court found the plaintiff's ADA claim was not precluded because he *was not* "complaining about

22   UP's decision to deny recertification, … [UP's] training methodology or testing criteria, [or]

23   attempting to obtain his license." 2017 WL 1740123, at *7. Instead, the plaintiff claimed he was

24   unlawfully retaliated against under the ADA because Union Pacific failed to notify him of his

25   recertification meetings as it had for the previous 18 years. *Id.* Implicit in the court's analysis

26   was that if the plaintiff *had* argued "that UP incorrectly determined that he … failed to meet the

27

28

[FRA] qualification requirements … for recertification" or challenged whether "UP's recertification decision was correct," such a claim would have been precluded by the FRSA. *Id.* (quotation omitted).

Plaintiffs' claims in this action are identical to those the *Weeks* court described as "fit[ting] within the express language of the FRA's dispute resolution regulations." *Id.* Specifically, Plaintiffs argue that Union Pacific unlawfully refused to recertify them as conductors and engineers despite their failed Ishihara exams because the company's CVFT does not accurately measure their ability to interpret colored wayside signals. Because Plaintiffs' claims take direct issue with "UP's decision to deny recertification" and its "testing criteria," and because they failed to exercise their appeal rights under the FRA's regulations, their remaining claims of ADA disparate treatment and disparate impact are precluded by the FRSA and should be dismissed with prejudice. 2017 WL 1740123, at *7.[8]

B.  Plaintiffs' Remaining ADA Claims are Time-Barred.

Before filing an action under the ADA, an employee must exhaust their administrative remedies by timely filing a charge of discrimination with the EEOC setting forth the alleged unlawful employment practice. *Simms v. DNC Parks & Resorts at Tenaya, Inc.*, No. 1:13-CV-2075 SMS, 2015 WL 1956441 at *3 (E.D. Cal. April 29, 2015) (citing 42 U.S.C. §§ 12117(a), 2000e-5(b), 2000e-5(e)(1)). In California, the charge must be filed within 300 days of the alleged discriminatory act.  42 U.S.C. §§ 2000e-5(3)(1), 12117(a); *see Josephs v. Pac. Bell*, 443 F.3d 1050, 1053-1054 (9th Cir. 2006).

---

[8] Even if the Court finds that Plaintiffs' remaining claims are not precluded by the FRSA, the Court may exercise its discretion and dismiss Plaintiffs' claims under the primary jurisdiction doctrine so they can be resolved by the FRA. *See, e.g., Syntek Semiconductor Co., Ltd., v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002) (stating that "courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts"); *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002) (stating the primary jurisdiction doctrine "is properly invoked when a claim … requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency.").

Here, Plaintiffs were issued permanent restrictions on June 6, 2016 (Goss), June 6, 2017 (Donahue) and June 11, 2018 (Campbell) after failing the Ishihara color vision test and Union Pacific's CVFT—but waited *years* to file their respective charges until April 10, 2020 (Campbell), April 24, 2020 (Donahue) and December 10, 2020 (Goss). Because Plaintiffs failed to file their charges within the prescribed 300-day window, their remaining ADA claims for disparate treatment and disparate impact are untimely absent tolling. And Plaintiffs cannot avail themselves of tolling based on the *Harris* class action because tolling ceased for *both* of these claims on August 17, 2018—the day the *Harris* plaintiffs moved for class certification.[9] Accordingly, Plaintiffs were required to file their charges of discrimination on or before June 13, 2019—which none of them did. Thus, these claims should be dismissed.

In *American Pipe & Constr. Co. v. Utah*, the Supreme Court held that putative class members could otherwise untimely intervene because the filing of an underlying class action— which ultimately was not certified—tolled the statute of limitations on their claims. 414 U.S. 538, 541-44, 560-61 (1974). The Supreme Court has since clarified that *American Pipe* tolling is equitable tolling "designed to modify a statutory time bar where its rigid application would create injustice." *Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.,* 137 S.Ct. 2042, 2051-52 (2017). "Plaintiffs have no substantive right to bring their claims outside of the statute of limitations. That they may do so, in limited circumstances, is due to a judicially crafted tolling rule that itself does not abridge, enlarge, or modify any substantive right." *China Agritech, Inc. v. Resh,* 138 S.Ct. 1800, 1810 (2018); *see also ANZ Sec.,* 137 S.Ct. at 2051-52 ("Nothing in the *American Pipe* opinion suggests that the tolling rule it created was mandated by the text of a statute or federal rule. Nor could it have."). Accordingly, *American Pipe* tolling "need not be applied mechanically" and "it should not be applied where doing so would result in an abuse of

---

[9] Union Pacific admits for purposes of this motion only that Plaintiffs' respective statutes of limitations were tolled for their remaining claims until the *Harris* plaintiffs sought class certification on August 17, 2018.

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S NOTICE OF       No. 3:21-CV-00448-MMC
MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

1    *American Pipe." Weitzner v. Sanofi Pasteur Inc.,* 909 F.3d 604, 609 (3rd Cir. 2018) (citing

2    *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 354 (1983)).

3         Moreover, to invoke tolling under *American Pipe*, a plaintiff must fit within the class that

4    the putative class action complaint sought to certify. *Menominee Indian Tribe of Wis. v. United*

5    *States*, 136 S.Ct. 750, 755-57 (2016). Indeed, a class action must "notif[y] the defendants not

6    only of the substantive claims being brought against them, but also of the number and generic

7    identities of the potential plaintiffs who may participate in the judgment." *American Pipe*, 414

8    U.S. at 555. Here, Plaintiffs *do not* fit within the class the *Harris* plaintiffs sought to certify with

9    respect to their disparate impact or disparate treatment claims because (1) the *Harris* plaintiffs

10   only moved for class certification on their ADA disparate treatment claim—abandoning class

11   treatment for their disparate impact claim; and (2) the *Harris* plaintiffs only sought certification

12   for disparate treatment on behalf of individuals "who have been or will be subject to a [FFD]

13   examination *as a result of a reportable health event*…"

14         **1.   Plaintiffs' Disparate Impact Claim was Abandoned on August 17, 2018.**

15        "[T]he tolling effect given to the timely prior filings in *American Pipe* … depended

16   heavily on the fact that those filings involved exactly the same cause of action subsequently

17   asserted." *Johnson v. Ry. Express Agency*, 421 U.S. 454, 467 (1975). "Only where there is

18   complete identity of the causes of action will the [tolling] protections suggested by petitioner

19   necessarily exist." *Id.* at 467 n.14.

20        Here, the *Harris* plaintiffs only sought "certification of Count I, ADA disparate

21   treatment, of the Amended Complaint[.]"Thus, once they filed their motion for class

22   certification, all claims *except* disparate treatment became "outside the scope" of the litigation

23   and the *Harris* plaintiffs were no longer prosecuting claims of disparate impact or unlawful

24   medical inquiries on behalf of absent class members. *Zarecor v. Morgan Keegan & Co.*, 801

25   F.3d 882, 888 (8th Cir. 2015); *see also Christensen v. Carter's Retail, Inc.*, No. 8:20-cv-00776

26   JSL, 2021 WL 4932244, at *1 n. 1 (C.D. Cal. Oct. 21, 2021) (finding plaintiff's failure to move

27

28

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S NOTICE OF      No. 3:21-CV-00448-MMC
MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

for class certification as to certain causes of action constituted abandonment of class treatment for those claims). Despite the amended complaint in *Harris* asserting a disparate impact claim on behalf of the class, it was voluntarily abandoned in the motion to certify and class members could no longer avail themselves to the benefit of tolling for that claim. *See, e.g,. Carrillo v. Union Pac. R.R. Co.,* No. EP-21-CV-00026-FM, 2021 WL 3023407 at *4-6 (W.D. Tex. July 16, 2021) (finding the *Harris* plaintiffs volunatrily abandoned their disparate impact claim); *Smithson v. Union Pac. R.R. Co*., No. SA-21-CV—01225-XR, 2022 WL 1506288 at *3-4 (W.D. Tex. May 11, 2022) (same); *Fulbright v. Union Pac. R.R. Co*., No. 3:20-CV-2392-BK, 2022 WL 625082 at *6 (N.D. Tex. Mar. 2, 2022) (same for *Harris* plaintiffs' "unlawful medical inquiry" claim not included in certification motion).

Identical to the plaintiffs in *Carrillo* and *Smithson*, Plaintiffs' ADA disparate impact claim is time barred because tolling for this claim ended on August 17, 2018—when the *Harris* plaintiffs only moved for certification on their ADA disparate treatment claim. Thus, Plaintiffs were required to administratively exhaust their disparate impact claim by June 13, 2019. Instead of doing so, they sat on their claims and waited until April 10, 2020 (Campbell), April 24, 2020 (Donahue) and December 10, 2020 (Goss) to file their charges—despite being represented by the same counsel as the *Harris* plaintiffs. As such, Plaintiffs' disparate treatment claim is time-barred and should be dismissed with prejudice.

### 2. Plaintiffs do not fit within the Narrowed *Harris* Class Definition for Disparate Treatment.

Despite the *Harris* plaintiffs moving certification on their ADA disparate treatment claim, they only did so on behalf of individuals "who have been or will be subject to a [FFD] examination *as a result of a reportable health event*…" Thus, to fall within the narrowed class definition stated in the *Harris* certification motion, putative class members were required to have experienced a "reportable health event" as defined by Union Pacific's Medical Rules. A "reportable health event" relating to color vision is defined by Union Pacific as "a *new* diagnosis, *recent* event, or *change* in a prior stable condition, for … significant vision change in

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S NOTICE OF      No. 3:21-CV-00448-MMC
MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

one or both eyes affecting … color vision." Importantly, Union Pacific's medical rules distinguish between reportable health events and regulatory medical evaluations as being separate circumstances that can trigger a FFD evaluation.

Here, Plaintiffs were referred for FFD evaluations after failing the Ishihara 14-plate color vision exam during their required FRA recertifications—not in response to a "reportable health event." Moreover, Plaintiffs do not claim they failed their most recent Ishihara exams or CVFTs due to a "reportable health event." Instead, they all allege they worked safely as conductors/engineers for over 10 years without issues relating to their color vision despite failing the Ishihara test upon hire and at least once during their required FRA recertifications— after which they were able to pass Union Pacific's previous CVFT and become re-certified. According to Plaintiffs, the only reason they failed their most recent FRA recertifications was because Union Pacific changed its CVFT from the exam they had been able to pass to the CVFT that was implemented in 2016 (i.e. the "Light Cannon")—not because of a "new diagnosis" or "recent change" in their ability to correctly interpret colored wayside signals.

Thus, while Plaintiffs were arguably included in the original *Harris* class definition ("[i]ndividuals who were removed from service … *for reasons related to a Fitness-for-Duty evaluation*…"), they do not fit within the narrowed class definition stated in the *Harris* certification motion filed on August 17, 2018 ("[a]ll individuals who have been or will be subject to a fitness-for-duty examination *as a result of a reportable health event*…"). Because Plaintiffs failed to timely exhaust their disparate treatment claim with the EEOC by June 13, 2019, the claim is time-barred and should be dismissed with prejudice. *See, e.g., Sawtell v. E.I. du Pont de Nemours & Co.*, 22 F.3d 248, 253 (10th Cir. 1994) (plaintiff who was a member of original class defined in underlying complaint was not a member of the revised, more narrow class defined in subsequent certification motion); *In re Syntex Corp. sec. Litig.*, 95 F.3d 922, 936 (9th Cir. 1996) (citing *Sawtell* and denying tolling to plaintiffs who were not asserted class members but sought to expand underlying class); *Smith v. Pennington*, 352 F.3d 884, 894 (4th Cir. 2003) ("We

15

1    believe that the *Sawtell* court employed the correct rule, and conclude that when a plaintiff

2    moves for class certification by asserting a [class] that is more narrow than [his complaint], his

3    asserted class for tolling purposes may be limited to that more narrow definition."); 

4    *Amalgamated Transit Union Loc. 1309 v. Laidlaw Transit Servs., Inc*., No. 05-CV-1199-IEG

5    (CAB), 2010 WL 582134 at *8 (S.D. Cal. Feb. 11, 2010) (citing *Smith* and *Sawtell* for principle

6    that tolling was limited to narrower class definition asserted in motion for class certification); *In*

7    *re New Oriental Educ. & Tech. Grp. Sec. Litig*., 293 F.R.D. 483, 487 (S.D.N.Y. 2013) ("[W]hen

8    a consolidated class action complaint redefines a class more narrowly than the prior individual

9    complaints, and no longer asserts claims on behalf of a portion of the consolidated class, the

10   statute of limitations is no longer tolled under *American Pipe* for that 'abandoned' subclass.").

11       C.   Plaintiffs' Disparate Treatment Claim Still Fails as a Matter of Law.

12       The ADA prohibits "discrimination against a qualified individual on the basis of

13   disability in regard to job application, the hiring, advancement, or discharge of employees,

14   employee compensation, job training, and other terms, conditions and privileges of

15   employment." 42 U.S.C. § 12112(a). A plaintiff can prove intentional discrimination under the

16   ADA "by presenting direct evidence of discrimination or making a prima facie showing of

17   discriminatory intent." *E.E.O.C. v. Creative Networks, LLC*, 912 F. Supp. 2d 828, 838 (D. Ariz.

18   2012) (citing *Daniel v. Boeing Co*., 764 F.Supp.2d 1233, 1240 (2011)). Here, Plaintiffs cannot

19   meet their burden under either evidentiary framework.

20       **1.   A Fitness-For-Duty Determination is not Direct Evidence of Discrimination.**

21       "Direct evidence [of discrimination] is rare, and usually arises only when the employer

22   admits to having a discriminatory motive." *Rogers v. Or. Trail Elect. Consumers Coop., Inc*.,

23   No. 3:10-CV-1337-AC, 2012 WL 1635127 at *12 (D. Or. May 8, 2012) (citing *Coghlan v. Am.*

24   *Seafoods Co*., 413 f.3d 1090, 1095 (9th Cir. 2005)). It consists of openly discriminatory

25   statements or actions by an employer that "if believed, proves the fact of discriminatory animus

26   without inference or presumption, while circumstantial evidence is evidence that requires an

27

28

1    additional inferential step to demonstrate discrimination." *Berg v. Calif. Horse Racing Bd*., 419

2    F.Supp.2d 1219, 1228 (E.D. Cal. 2006) (citing *Coghlan*, 413 F.3d at 1095)).

3         Here, Plaintiffs were denied their FRA recertifications and not returned to service

4    because they failed Union Pacific's CVFT after failing their initial Ishihara exams. Concluding

5    that Plaintiffs were ineligible to be re-certified under binding FRA regulations is not the same as

6    refusing to return them work due to prejudice against their medical conditions. Accordingly,

7    Plaintiffs cannot produce direct evidence of discrimination to support their claims. *See, e.g.,*

8    *Bohner v. Union Pac. R.R. Co.*, No. 4:19-cv-02581-SEP, 2021 WL 3363063, at *4 (E.D. Mo.

9    Aug. 3, 2021) (no direct evidence of disability discrimination where plaintiff was referred for

10   FFD evaluation and not returned to work after being issued medical restrictions); *Jackson v.*

11   *Union Pac. R.R. Co.*, No. 4:19-cv-00069-RGE-RAW, 2021 WL 1726895, at *11 (S.D. Iowa

12   Mar. 29, 2021) (applying *McDonnell Douglas* where Union Pacific concluded employee was at

13   risk for sudden incapacitation following a stroke and issued work restrictions); *Krehbiel v. Union*

14   *Pac. R.R. Co.*, No. 19-2002-JAR, 2020 WL 5503363, at *7-*8 (D. Kan. Sept. 11, 2020)

15   (applying *McDonnell Douglas* when employee was not returned to work after FFD evaluation

16   because he could not safely perform his job).

17              **2.   Plaintiffs Cannot Produce Indirect Evidence of Discrimination.**

18         To establish their *prima facie* case under the *McDonnell Douglas* framework, Plaintiffs

19   must show (1) they are disabled within the meaning of the ADA; (2) they are qualified, with or

20   without reasonable accommodation to perform the essential functions of their jobs; and (3) they

21   suffered an adverse employment action because of their disability. *See Boyd v. Fallbrook Union*

22   *Elem. Sch. Dist*., No. 18cv1816-LAB (KSC), 2019 WL 183506 at *2 (S.D. Cal. Jan. 11, 2019). If

23   Plaintiffs make a *prima facie* case, the burden shifts to Union Pacific to articulate a legitimate,

24   nondiscriminatory reason for its actions. *Arias v. McHugh*, No. CIV.2:09-690 WBS GGH, 2010

25   WL 2511175 at *12 (E.D. Cal. June 17, 2010).  Once Union Pacific does so, the burden shifts

26

27

28

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S NOTICE OF      No. 3:21-CV-00448-MMC
MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

back to Plaintiffs to show that Union Pacific's stated reasons are pretext designed to mask discrimination. *Id.*

> i. **Plaintiffs were not qualified under the ADA because they could not satisfy the FRA's mandatory color-vision standard for recertification.**

A "qualified individual" under the ADA is one "who, with or without, reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m); *see also* 42 U.S.C. § 12111(8). Ninth Circuit courts have "adopted the EEOC's two-step inquiry as the test for whether an individual is qualified within the meaning of the ADA." *Johnson v. Bd. of Trustees of Boundary Cnty. Sch. Dis. No. 101*, 666 F.3d 561, 565 (9th Cir. 2011) (citing *Bates*, 511 F.3d at 990). Under the EEOC's regulations, a qualified individual is one who (1) "satisfies the requisite skills, experience, education and other job-related requirements" of the position; *and* (2) "who, with or without reasonable accommodation, can perform the essential functions of such position." *Id.* (citing 29 C.F.R. Pt. 1630, App. to § 1630.2(m)). Here, Plaintiffs cannot demonstrate they were qualified for their positions because they failed to obtain their required FRA recertifications after failing the Ishihara 14-plate test and Union Pacific's CVFT.

Both the Supreme Court and Ninth Circuit courts have routinely found plaintiffs not "qualified" under the ADA when they did not possess the required certification or licensure for their positions. *See, e.g., Herron v. Peri & Son's Farms, Inc.*, No. 3:13-cv-00075, 2014 WL 1917934 at *5 (D. Nev. May 13, 2014) (finding plaintiff not qualified for mechanic position because he did not possess certificate of completion from a certified technical school as required by the employer); *Johnson,* 666 F.3d at 565 (finding a teacher was not qualified for her position because teaching certificate had expired and Idaho law required all teachers to have the proper certificate); *Albertson's, Inc. v. Kirkinburg*, 527 U.S. 555, 577-78 (1999) (no ADA violation where trucking company terminated a visually impaired driver who failed to meet Department of Transportation ("DOT") vision acuity standards). Moreover, numerous other circuits have agreed that employees (like Plaintiffs) who cannot meet a federally mandated safety standard fail—as a matter of law—to establish they are "qualified" under the ADA. *See, e.g., McNelis v. Pa. Power*

*& Light Co.*, 867 F.3d 411, 415-18 (3d. Cir. 2017) (security officer who lost required security clearance required by Nuclear Regulatory Commission ("NRC") regulations not qualified under ADA) (collecting cases); *Williams v. JB Hunt Trans. Inc.*, 826 F.3d 806, 811-13 (5th Cir. 2016) (plaintiff not qualified under ADA "[b]ecause he lacked the DOT certification required by federal law"); *Hawkins v. Schwan's Home Service, Inc.*, 778 F.3d 877, 895 (10th Cir. 2015) (employee who was terminated after failing DOT-mandated medical exam not qualified under the ADA); *Harris v. P.A.M. Transp., Inc.*, 339 F.3d 635, 639 (8th Cir. 2003) (affirming dismissal of ADA claim where the employer "was applying [DOT regulations] to which it was bound.").

Union Pacific is legally mandated to comply with the FRA's regulations—the purpose of which is to reduce the rate and number of railroad accidents and injuries by, in part, ensuring that locomotive conductors and engineers meet minimum Federal safety standards. This includes the requirement that engineers and conductors (like Plaintiffs) have the ability to recognize and distinguish between various colored wayside signals, and FRA regulations identify the Ishihara 14-plate test as an acceptable method for measuring this ability. If an employee fails their Ishihara 14-plate test during their FRA certification or recertification exam, FRA regulations state they can be further evaluated by undergoing a CVFT to determine if they are capable of safely performing their duties. Here, there is no dispute that Plaintiffs each failed their Ishihara 14-plate exams and then proceeded to fail the CVFT administered by Union Pacific—rendering them ineligible for FRA recertification. As such, there can also be no dispute they were not qualified to hold their positions.

Nonetheless, Plaintiffs contest the denial of their FRA recertifications based on their failures of Union Pacific's CVFT known as the "Light Cannon" claiming (1) it was not properly validated and did not accurately measure their ability to see and interpret colored wayside signals; and (2) they were able to pass the CVFT utilized by Union Pacific before implementing the "Light Cannon" in 2016. Both of these arguments are meritless. The Eighth Circuit has already addressed—and rejected—Plaintiffs' first argument:

19

> It is undisputed the [FRA] regulations do not describe how the
> field test is to be conducted but rather, state that the railroad may
> exercise its discretion to conduct the [color vision] field test in a
> manner of its choosing in conjunction with its medical advisor.
> There is no prescribed methodology for the manner in which a
> filed [sic] test is to be conducted.

*Brunskill v. Kansas City Southern Ry. Co.*, No. 06-00205-CV-W-REL, 2008 WL 413281 at *29

(W.D. Mo. Feb. 12, 2008).[10]   Because the railroad's chief medical officer believed the CVFT

administered to the *Brunskill* plaintiff was an appropriate method for measuring his color vision

under FRA, the court deemed this sufficient to rebut the plaintiff's ADA discrimination claim

wherein he challenged his failure of the CVFT and resulting denial of FRA recertification. *Id*.

Also irrelevant are Plaintiffs assertions of being able to pass Union Pacific's previous CVFT.

*See, e.g.*, *Bey v. City of New York*, 999 F.3d 157, 161-62, 168 (2d Cir. 2021) (citing *Albertson's*

and finding that fire department was not obligated to continue permitting firefighters to wear

closely cropped beards because it felt that doing so was not permitted by OSHA regulations).

At bottom, Plaintiffs failed to satisfy the FRA's color vision standards necessary for

recertification as conductors and engineers. Thus, they are not "qualified" under the ADA and

their disparate treatment claim fails as a matter of law.

### ii.    Regardless, Union Pacific had Legitimate, Non-Discriminatory Reasons for its Actions and Plaintiffs Cannot Prove Pretext.

Even if Plaintiffs could establish a *prima facie* case of discrimination under the ADA—

which they cannot—they must also "tender a genuine issue of material fact as to pretext in order

to avoid summary judgment." *Arias*, 2010 WL 2511175 at *12 (alteration in original) (quotation

omitted). To do so, Plaintiffs must persuade the court that Union Pacific's "proffered explanation

is unworthy of credence." *Zeinalie v. Raytheon Co.*, 636, F.3d 544, 552 (9th Cir. 2011). Further,

Plaintiffs' "subjective beliefs do not create a genuine issue of fact as to pretext." *Radford v.*

*Union Here Local 2*, No. C-10-00745, 2011 WL 13376924 at *7 (N.D. Cal. June 29, 2011)

(citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063) (9th Cir. 2002) ("Rather, courts

---

[10] *Aff'd*, 331 Fed.Appx. 426, 2009 WL 2448265 (8th Cir. 2009).

only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless.") (quotations omitted)).

Here, Plaintiffs were referred for FFD evaluation after failing their Ishihara 14-plate tests during their FRA recertification exams. Under FRA regulations, Plaintiffs were administered Union Pacific's CVFT known as the "Light Cannon" to determine if they had sufficient color-vision acuity to be re-certified as conductors and engineers under the FRA. Because Plaintiffs also failed Union Pacific's CVFT, Union Pacific was unable to re-certify them as conductors and engineers in accordance with FRA regulations and could not return them to their original positions. Adhering to the FRA's binding regulations regarding the color-vision standards for locomotive conductors and engineers was a legitimate, non-discriminatory reason for not returning Plaintiffs to service. And Plaintiffs present no evidence demonstrating this good-faith adherence to federally mandated regulations was pretext for intentional discrimination. *See, e.g., Vaughn v. FedEx Freight, Inc*., 421 F.Supp.3d 1302, 1310-12 (N.D. Ala. 2019) (employer's reliance on applicable FMCSA medical guidelines was a legitimate, non-discriminatory reason for disqualifying driver); *Sharbono v. Northern States Power Co*., 218 F.Supp.3d 1004, 1019 (D. Minn. 2016) (no pretext for disability discrimination where employee was unable to comply with safety-footwear requirements of OSHA policy).

At bottom, Plaintiffs are required to prove discriminatory intent and they cannot offer any evidence doing so. Thus, the Court should grant summary judgment in Union Pacific's favor.

D. <u>Plaintiffs' Disparate Impact Claim Still Fails as a Matter of Law.</u>

By alleging Union Pacific violated 42 U.S.C. §12112(b)(6), Plaintiffs have asserted a disparate impact claim under the ADA. *See Carrillo*, 2021 WL 3023407 at *3 (holding that a claim alleging a violation of §12112(b)(6) against Union Pacific is a disparate impact claim); *Fulbright*, 2022 WL 625082 at *2 (same). Under §12112(b)(6), employers are prohibited from "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability … *unless* the standard, test or other selection criteria

21

… is shown to be job-related and consistent with business necessity." (emphasis added). Here, Plaintiffs' disparate impact claim is not only precluded and time-barred—but also fails because Plaintiffs cannot demonstrate they were qualified for their positions, only allege that Union Pacific "regarded" them as disabled, and Union Pacific's color-vision screening protocols are job-related and consistent with business necessity.

Before an employee can challenge an employer's qualification standard, they "*must first prove [they] are a qualified individual within the meaning of the ADA, that is, one who can perform the job's essential functions with or without reasonable accommodation.*" *Id.* (emphasis added); *see also Montgomery v. Union Pac. R.R. Co.*, 848 Fed.Appx. 314, 315 n.2 (9th Cir. 2021) (rejecting argument that plaintiff need not prove they are "qualified" for claims brought under §12112(b)(6)). As discussed above, Plaintiffs were not qualified for their positions under the ADA because they failed to satisfy the FRA's color vision requirements and, as a result, were denied their required FRA recertifications for their positions. For this reason alone, Plaintiffs lack the ability to challenge Union Pacific's color vision screening protocols. *Bates*, 511 F.3d at 989 (citing 42 U.S.C. §12113(a)).

Moreover, Plaintiffs' Complaint only alleges they are disabled under the ADA because Union Pacific "regarded" them as such. Doc. 1, ¶ 68. While being "regarded as" disabled can form the basis of an ADA *disparate treatment* claim, the same is not true for an ADA *disparate impact* claim. Alleging that a plaintiff was "regarded as" disabled under the ADA undermines the statute's purpose with respect to disparate impact. Specifically, the ADA and its accompanying regulations prohibit employers from using selection criteria that screen out individuals "on the basis of [a] disability." 29 C.F.R. § 1630.10(a). By excluding any mention of screening out individuals who are "regarded as" disabilities, there can be no question the regulation only contemplates qualification standards that screen out those with actual disabilities.

Finally, even if Plaintiffs could establish they are qualified and have an actual disability under the ADA, there is no question that Union Pacific's color vision screening protocol is "job-

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S NOTICE OF     No. 3:21-CV-00448-MMC
MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

related for the position in question and is consistent with business necessity" because it is *mandated* by the FRA. *Albertson's*, 527 U.S. at 568 (noting the class of plaintiffs "accepts, as [they] must, that [defendant] may lawfully exclude individuals who fail the DOT test from positions that would require them to drive DOT-regulated vehicles."); *Bates*, 511 F.3d at 998 (9th Cir. 2007) (distinguishing between a mandatory DOT safety regulation that an employer need not justify and the defendant's discretionary imposition of the same standard on vehicles to which it does not apply). As discussed above, FRA regulations require that engineers and conductors (like Plaintiffs) have the ability to recognize and distinguish between various colored wayside signals—and identify the Ishihara 14-plate test as an acceptable method for measuring this ability. If a Union Pacific conductor or engineer fails their initial Ishihara 14-plate test during their FRA certification or recertification exam, FRA regulations state they can be further evaluated by undergoing a CVFT to determine if they are capable of safely performing their duties. If a conductor or engineer fails their initial Ishihara test and Union Pacific's CVFT (like Plaintiffs), Union Pacific is not required to further evaluate their color vision to determine whether they qualify for FRA recertification.

Union Pacific is not "insisting upon a job qualification merely of its own devising, subject to possible questions about genuine appropriateness and justifiable application to an individual for whom some accommodation may be reasonable." *Albertson's*, 527 U.S. at 570. Instead, the job qualification Union Pacific applied to Plaintiffs is the FRA's requirement that conductors and engineers have sufficient color vision acuity to obtain recertification under the FRSA—and this requirement is "binding" on Union Pacific. Like the FMCSA regulations at issue in *Albertson's*, the FRA regulations governing the certification of locomotive engineers and conductors are "unchallenged" and "have the force of law." 527 U.S. at 556. Indeed, multiple circuits have declined "to force a choice [on employers] between the rock of ADA liability and the hard place of regulatory violation." *Coffey v. Norfolk S. Ry. Co.*, 23 F.4th 332, 340 (4th Cir. 2022) (finding railroad's requests for medical records were "by definition" a business necessity

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S NOTICE OF      No. 3:21-CV-00448-MMC
MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES

because they were required by federal regulation); *McNelis*, 867 F.3d at 416 n.2 (3d Cir. 2017) (refusing to force employer "to pick between ADA liability on one hand and administrative penalties on the other"); *Williams*, 826 F.3d at 811 (5th Cir. 2016) (declining to make employers "face the dilemma of risking ADA liability or violating the DOT's command"). Because Union Pacific's color vision screening protocols are mandated by federal regulation, they are—as a matter of law—job-related and consistent with business necessity.

E.  Plaintiffs' Punitive Damages Claim also Fails.

Punitive damages are not recoverable in employment discrimination cases unless a plaintiff proves their employer intentionally discriminated against them "with malice" or "reckless indifference to [their] federally protected rights." *E.E.O.C. v. Braun Elec. Co*., No. 1:12-cv-01592-LJO-JLT, 2014 WL 356998, at *6, n. 2 (E.D. Cal., Jan. 24, 2014).

This heightened standard mirrors that stated by the U.S. Supreme Court in *Kolstad v. American Dental Ass'n*, wherein the Court sought "to resolve a conflict among the Federal Courts of Appeals concerning the circumstances under which a jury may consider a request for punitive damages" in Title VII cases. 527 U.S. 526, 533 (1999). The *Kolstad* Court found employers may be liable for punitive damages only when it is shown they acted with "malice or reckless indifference to the plaintiff's federally protected rights." *Id*. at 535 (quoting §1981a(b)(1)). Indeed, "Congress plainly sought to impose two standards of liability—one for establishing a right to compensatory damages and *another, higher* standard that a plaintiff must satisfy to qualify for a punitive award." *Id*. at 534 (emphasis added). A plaintiff must prove their employer engaged in intentional discrimination *and* that they did so with malice or "in the face of" a perceived risk that its actions would violate federal law in order to justify a punitive damages award. *Id*. at 536. "There will be circumstances where intentional discrimination does not give rise to punitive damages liability under this standard." *Id*. at 536-37; *Rawlings v. Apodaca,* 726 P.2d 565, 578 (Ariz. banc. 1986) ("We do not believe the concept of punitive

1    damages should be stretched. We restrict its availability to those cases in which the defendant's

2    wrongful conduct was guided by evil motives.").

3         Plaintiffs have presented no facts to suggest that Union Pacific intentionally

4    discriminated against them with malice or reckless disregard towards their rights. In contrast,

5    Plaintiffs were only removed from service after failing the Ishihara test during their mandatory,

6    FRA recertification process. Indeed, Union Pacific was *required* to remove them from service

7    and determine if their color vision met the standards for FRA recertification. When Plaintiffs

8    failed their CVFTs, Union Pacific had no choice but to deny their FRA recertifications. Because

9    none of the above amounts to "malice or reckless indifference" towards Plaintiffs' rights, Union

10   Pacific is entitled to summary judgment on their claims for punitive damages. *See Barrett v.*

11   *Union Pac. R.R. Co*., No. 19-cv-06377-CV, 2021 WL 233129, at *1 (N.D. Cal. Jan. 25, 2021)

12   (granting summary judgment in Union Pacific's favor on Plaintiff's punitive damages claim).

13   **IV.    CONCLUSION**

14        For the foregoing reasons, the Court should grant Union Pacific summary judgment on

15   Plaintiffs' remaining claims of disparate treatment and disparate impact claim under the ADA.

16

17   Dated: August 5, 2022              Respectfully submitted,

18                                      CONSTANGY, BROOKS, SMITH & PROPHETE, LLP

19

20                                      By:___*/s/ Andrea Rawlins*_____
21                                          Robert L. Ortbals, Jr.
                                            Andrea Rawlins
22                                          Katie M. Rhoten
                                            Attorneys for Defendant
23                                          UNION PACIFIC RAILROAD COMPANY

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that on August 5, 2022, I electronically transmitted the foregoing

3

document to the Clerk's Office using the CM/ECF System for filing and service via transmittal

4

of a Notice of Electronic Filing.

5

I declare under penalty of perjury under the laws of the United States of America that the

6

foregoing is true and correct.

7

Executed on August 5, 2022, at San Francisco, California.

8

*/s/ Andrea Rawlins*
Attorney for Defendant

9

UNION PACIFIC RAILROAD COMPANY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S NOTICE OF    No. 3:21-CV-00448-MMC
MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES