CONSTANGY, BROOKS, SMITH & PROPHETE LLP
ANDREA RAWLINS (SBN 253715)
arawlins@constangy.com
601 Montgomery Street, Suite 350
San Francisco, CA 94111
Telephone: (415) 918-3000

ROBERT L. ORTBALS, JR. (*Pro Hac Vice*)
rortbals@constangy.com
KATIE M. RHOTEN (*Pro Hac Vice*)
krhoten@constangy.com
680 Craig Road, Suite 400
St Louis, MO 63141
Telephone: (314) 338-3740
Facsimile: (314) 665-1707

*Attorneys for Defendant*
UNION PACIFIC RAILROAD COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN DONAHUE; JASON CAMPBELL; and JACOB GOSS,<br><br>Plaintiffs,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>Defendant. | Case No. 3:21-CV-00448-MMC<br><br>**DEFENDANT UNION PACIFIC RAILROAD COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date: September 9, 2022<br>Time: 9:00 a.m.<br>Dept.: Courtroom 7 – 19th Floor<br>Judge: Hon. Maxine M. Chesney<br><br>Complaint Filed: January 19, 2021 |

i

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S REPLY
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

No. 3:21-CV-00448-MMC

MEMORANDUM OF POINTS AND AUTHORITIES

**I.  INTRODUCTION**

Plaintiffs Jason Campbell, Justin Donahue and Jacob Goss attempt to ask this Court to pretend that Union Pacific bears no obligations to comply with the Federal Railroad Safety Act (FRSA) or the Federal Railroad Administration's (FRA) regulations that govern their positions as railroad conductors and engineers. Indeed, they all but suggest Union Pacific should have permitted them to continue working as conductors and engineers despite failing to obtain their FRA recertifications because they were previously able to recertify under the FRA by taking and passing Union Pacific's former color vision field test ("CVFT"). This is the same CVFT that the NTSB concluded had failed to ensure an engineer involved in the Goodwell, Oklahoma train collision had adequate color vision acuity; and the same CVFT that Plaintiff Goss testified he was able to pass by memorizing the *position* of various signal colors on a signal mast—as opposed to correctly identifying the signal color itself.

Despite following the NTSB's directive after the Goodwell collision and developing a new CVFT in accordance with the discretion provided to it by the FRA's regulations, Plaintiffs attempt to survive summary judgment on the basis that Union Pacific's revised CVFT was not "valid" and cannot serve as a lawful basis for its decisions to deny Plaintiffs their FRA recertifications. Because Plaintiffs' claims are precluded by the FRSA and time-barred—and Plaintiffs cannot produce direct evidence of discrimination or prove they were "qualified" under the ADA—the Court should grant summary judgment in Union Pacific's favor and dismiss Plaintiffs' remaining claims with prejudice.

**II.  ARGUMENT AND AUTHORITIES**

A.  <u>Plaintiffs' Remaining ADA Claims are Precluded by the FRSA</u>.

Plaintiffs do not dispute the FRA "has a dispute resolution process in which a person denied … certification may obtain a fresh determination by the FRA." *Weeks v. Union Pac. R.R. Co.*, No. 1:13-CV-1641 AWI JLT, 2017 WL 1740123, at *7 (E.D. Cal. May 3, 2017) (quotation

1

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S REPLY
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

No. 3:21-CV-00448-MMC

omitted); 49 § C.F.R 240.401(a)); *see also* § 242.501; Doc. 65, p. 16, *passim*. Nor do they dispute their failures to take advantage of this process. Doc. 65, *passim*. Instead, they argue the Court should disregard the on-point and relevant analysis in *Weeks v. Union Pac. R.R. Co*. because it discussed the FRSA's *preemption* of a state statute—as opposed to the *preclusion* of another federal statute. Doc. 65, p. 16. In doing so, Plaintiffs fail to recognize that "[w]hile the preemption doctrine does not apply to the interplay between two federal schemes, the inquiry into the conflict between those schemes is similar to the preemption analysis because 'both preemption of state law and preclusion of federal statutory remedies are questions of congressional intent.'" *Central Valley Chrysler-Jeep, Inc. v. Goldstene*, 529 F. Supp. 2d 1151, 1164 (E.D. Cal. 2008) (quoting *Felt v. Atchinson, Topeka Santa Fe Rwy*., 60 F.3d 1416, 1419 (9th Cir. 1995)).

Here, the FRA *intended* for its dispute resolution process to provide an avenue for engineers and conductors—like Plaintiffs—who believe they were wrongfully denied FRA certification by their railroad employer to "obtain a fresh determination by the FRA of whether the railroad's decision was correct." *Weeks*, 2017 WL 1740123, at *7. And while Plaintiffs attempt to avoid summary judgment by broadly painting their claims as "concern[ing] issues not addressed by the FRSA," there is no dispute their claims take direct issue with Union Pacific's decision not to recertify them based on their inability to pass the Ishihara color-vision exam and the company's CVFT. *See generally* Doc. 1, ¶¶ 1-6, 29-65, 73, 80. As such, Plaintiffs' reliance on non-binding Second Circuit case law—which predates *Weeks* by over a decade—is inapposite. Specifically, the plaintiff in *Tufariello v. Long Island R. Co.* sued his railroad employer under the Federal Employers' Liability Act ("FELA") alleging that he suffered permanent hearing loss due to being exposed to the repeated sounding of locomotive horns and his employer negligently failed to provide him with adequate hearing protection. 458 F.3d 80, 85-86 (2d. Cir. 2006). The district court granted summary judgment in the employer's favor, finding the plaintiff's FELA claim was "preempted" by the FRSA because it establishes

2

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S REPLY
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

No. 3:21-CV-00448-MMC

minimum sound levels for warning devices on trains. *Id.*, at 86. In reversing summary judgment, the Second Circuit found the FRSA regulations "do not address the circumstances under which railroad employees must be provided hearing protection" and, thus, do not preclude a *negligence* suit based on the railroad's alleged failure to equip an employee with hearing protection. *Id.*

Here, Plaintiffs cannot deny their claims take direct issue with "UP's decision to deny recertification" and its "testing criteria" relied on in doing so. *Weeks*, 2017 WL 1740123, at *7. As such, their ADA disparate treatment and disparate impact claims are precluded by the FRSA and should be dismissed with prejudice.[1]

B. <u>Plaintiffs' Remaining ADA Claims are Time-Barred.</u>

As stated by the U.S. Supreme Court in *China Agritech, Inc. v. Resh,* "Plaintiffs have no substantive right to bring their claims outside of the statute of limitations." 138 S.Ct. 1800, 1810 (2018). Yet this is exactly what Plaintiffs attempt to do here with respect to their remaining ADA claims of disparate impact and disparate treatment. Because the *Harris* plaintiffs did not move for certification on their disparate impact claim—and limited their class for disparate treatment to individuals who experienced a "reportable health event"—Plaintiffs do not fit within the narrowed class the *Harris* plaintiffs sought to certify and their remaining claims fail as a matter of law. *See Menominee Indian Tribe of Wis. v. United States*, 136 S.Ct. 750, 755-57 (2016).

**1. Plaintiffs' Disparate Impact Claim was not Tolled by *Harris*.**

The Supreme Court has stated that "complete identity" of claims is required for the protections of equitable tolling to apply. *Johnson v. Ry. Express Agency*, 421 U.S. 454, 467 n. 14 (1975). Nonetheless, Plaintiffs ask this Court to find that tolling their ADA disparate impact claim is "fair" because it is "functionally identical" to the claims asserted on a classwide basis

---

[1] Plaintiffs fail to respond to Union Pacific's arguments regarding the Court's ability to exercise its discretion and dismiss their claims under the primary jurisdiction doctrine so they can be resolved by the FRA. *See* Doc. 60, p. 18 n. 8; Doc. 65, *passim*. As such, Plaintiffs concede this point. *See Emery v. Pierce Cty.*, 435 Fed. Appx. 611, 613 (9th Cir. 2011) ("Plaintiffs waived their remaining arguments and claims by not coming forward with evidence to support them and in not making their arguments in their summary judgment response.")

3

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S REPLY           No. 3:21-CV-00448-MMC
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

before the *Harris* plaintiffs moved for certification and, thus, provided Union Pacific adequate notice of the same. Doc.65, p. 19. This proposition fails for multiple reasons.

First, recent Ninth Circuit precedent *does* indicate that failing to move for class certification on certain claims constitutes abandonment of those claims for purposes of class treatment. *See Christensen v. Carter's Retail, Inc*., No. 8:20-cv-00776 JSL, 2021 WL 4932244, at *1 n. 1 (C.D. Cal. Oct. 21, 2021). Moreover, and as stated by one of the numerous courts that have already found the *Harris* plaintiffs voluntarily abandoned their disparate impact claim (none of which were addressed in Plaintiffs' opposition), a disparate treatment claim does not provide adequate notice of a disparate impact claim for purposes of tolling:

> Even assuming *American Pipe* tolling does not require complete identity of the class claims and the subsequent individual claims … Once the *Harris* plaintiffs abandoned the class-wide disparate impact claim, Union Pacific did not have fair notice of [the plaintiff's] disparate impact claim simply because the class-wide disparate treatment claim proceeded. The Supreme Court has 'consistently recognized a distinction between claims of discrimination based on disparate treatment and claims of discrimination based on disparate impact.'

*Smithson v. Union Pac. R.R. Co*., No. SA-21-CV—01225-XR, 2022 WL 1506288 at *3-4 (W.D. Tex. May 11, 2022) (citing *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003)). This analysis is consistent with the Ninth Circuit precedent on which Plaintiffs rely. *See Williams v. Boeing Co*., 517 F.3d 1120, 1136 (9th Cir. 2008) (noting "the tolling rule 'does not leave [] a plaintiff free to raise different or peripheral claims following denial of class certification.[']") (quoting *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 352 (1983) (alteration in original); *Renati v. Wal-Mart Stores, Inc.*, No. 19-cv-02525-CRB, 2019 WL 5536206, at *13 (N.D. Cal. Oct. 25, 2019) (same).

Here, Plaintiffs' ADA disparate impact claim is time barred because tolling for this claim ended on August 17, 2018—when the *Harris* plaintiffs only moved for certification on their ADA disparate treatment claim. Thus, Plaintiffs were required to administratively exhaust their disparate impact claim by June 13, 2019—which none of them did. As such, Plaintiffs' disparate impact claim fails as a matter of law and Union Pacific is entitled to summary judgment.

4

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S REPLY
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

No. 3:21-CV-00448-MMC

### 2. Plaintiffs Concede they did not Experience a "Reportable Health Event" as Specified in the Narrowed *Harris* Class Definition for Disparate Treatment.

Contrary to Plaintiffs' assertions in their summary judgment opposition, Union Pacific is not arguing the narrowed definition of the *Harris* class excluded all "individuals removed from service … for color-vision deficiency and failure to pass the Light Cannon test." Doc. 65, p. 17. Indeed, Union Pacific acknowledged in its summary-judgment motion that Plaintiffs were arguably included in the original *Harris* class definition ("[i]ndividuals who were removed from service … *for reasons related to a Fitness-for-Duty evaluation*…"). Doc. 60, p. 22. Instead, Union Pacific is arguing that Plaintiffs were excluded from the narrowed *Harris* class because they were not removed from service or required to take a CVFT due to a "reportable health event." *Id.*, pp. 21-23. In moving for certification, the *Harris* plaintiffs only did so on behalf of individuals "who have been or will be subject to a [FFD] examination *as a result of a reportable health event*…" As such, the existence of a reportable health event that triggered a FFD evaluation is determinative as to whether an employee remained a putative member of the class after the *Harris* plaintiffs moved for certification.

Plaintiffs' opposition is silent on this point. They do not contest the narrowed definition's specification of a "reportable health event" in comparison to the original class definition. Doc. 65, *passim*. Nor do Plaintiffs respond to Union Pacific's arguments that they did not experience a "reportable health event" that triggered their removal from service. *See* Doc. 60, p. 22. As such, they concede these points "through silence." *Ardente, Inc. v. Shanley*, No. C 07-4479, 2010 WL 546845, at *6 (N.D. Cal. Feb. 9, 2010). Plaintiffs instead vaguely allege the *Harris* court "found, unequivocally, that the *Harris* class action included individuals removed from service following a light cannon test." Doc. 65, p. 18. This is misleading—the *Harris* court permitted discovery relating to the Light Cannon test based on the original class definition stated in *Harris* plaintiffs' first amended complaint. *See* Doc. 65-25, pp. 7, 9. The *Harris* court never suggested—let alone "found"—that the narrowed class definition included employees who did not experience a reportable health event.

5

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

No. 3:21-CV-00448-MMC

Because Plaintiffs concede they did not experience reportable health events, and failed to timely exhaust their disparate treatment claims after the *Harris* plaintiffs moved for class certification, the claim is time-barred and should be dismissed with prejudice.

C. <u>Plaintiffs' Disparate Treatment Claim Under §12112(a) Still Fails as a Matter of Law.</u>[2]

In its opening brief, Union Pacific argued Plaintiffs cannot show it acted with discriminatory intent through direct evidence; or indirectly by demonstrating that its legitimate, nondiscriminatory reasons for removing Plaintiffs from service and issuing them work restrictions were pretext for intentional discrimination. Plaintiffs' opposition makes no attempt to prove discriminatory intent or pretext under the *McDonnell Douglas* framework. Instead, Plaintiffs argue "the framework of *McDonnell Douglas* is not applicable" because Union Pacific's color-vision screening protocols are "facially discriminatory" and, thus, constitute direct evidence of discrimination—meaning Plaintiffs "need not show" pretext. Doc. 65, pp. 20-21. In doing so, Plaintiffs concede they cannot satisfy their burden under the *McDonnell Douglas* framework. *See Emery*, 435 Fed.Appx. at 613. Because Plaintiffs fail to present direct evidence of discrimination, their disparate treatment claim fails as a matter of law.

**1. Union Pacific's Color-Vision Screening Protocols are not Direct Evidence of Discrimination.**

Plaintiffs attempt to analogize this case to *Bates v. UPS*, 511 F.3d 974, 988 (9th Cir. 2007), to prove direct evidence of discrimination. But Plaintiffs' reliance on *Bates* for this purpose is misplaced and unavailing, as the facts in this case are distinguishable. In *Bates*, the employer (of its own volition) required that its non-DOT drivers meet the same regulatory

---

[2] In their opposition, Plaintiffs purport to assert an ADA disparate treatment claim under both §12112(a) and §12112(b)(6). *See* Doc. 65, p. 20. In doing so, Plaintiffs fail to recognize that "§12112(b)(6) is a disparate impact provision." *See, e.g., Carrillo*, 2021 WL 3023407 at *3 (holding that a claim alleging a violation of §12112(b)(6) against Union Pacific is a disparate impact claim); *see also Fulbright v. Union Pac. R.R. Co.*, No. 3:20-CV-2392-BK, 2022 WL625082, at *2 (N.D. Tex., March 2, 2022) (holding "Plaintiff's section 12112(b)(6) claim is properly characterized as one for disparate impact" and "analyzing Plaintiff's [§12112(b)(6)] claim under a disparate treatment theory would be nonsensical").

6

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S REPLY
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

No. 3:21-CV-00448-MMC

hearing standard applicable to its DOT-drivers, despite the fact that non-DOT drivers were not required by law to meet these standards in order to hold their positions. 511 F.3d at 988. As such, the *Bates* court determined the employer's self-imposed standard was "facially discriminatory"—analogizing it to an employer's *sua sponte* policy requiring employees to be "100%" or "fully healed" before being allowed to return to work. *Id*. (quoting *McGregor v. Nat'l R.R. Passenger Corp*., 187 F.3d 1112, 1116 (9th Cir. 1999)).

In contrast to the non-DOT drivers at issue in *Bates*, here, there is no dispute that Plaintiffs' positions as railroad conductors and engineers are governed by binding FRA regulations—including regulations for color-vision acuity—which Union Pacific is legally required to abide by. Indeed, *none* of the cases cited by Plaintiffs for the proposition that Union Pacific's color-vision screening protocols constitute direct evidence of discrimination involve an employer's adherence to federally mandated safety regulations. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985) (declining to apply *McDonnell Douglas* in ADEA case where employer only permitted captains who were disqualified for reasons other than age to transfer to less senior positions of flight engineers); *Monette v. Electronic Data Systems Corp*., 90 F.3d 1173, 1177 (9th Cir. 1996) (declining to apply *McDonnell Douglas* in ADA case where employer's explanation for replacing the plaintiff—a customer service representative—was that he was on medical leave and, thus, unable to perform his job); *Dark v. Curry Cty*., 451 F.3d 1078, 1084 (9th Cir. 2006) (applying *McDonnell Douglas* and finding (1) that employer's evidence of legitimate, nondiscriminatory motive was not sufficient on its own to warrant summary judgment and (2) that record was "replete with evidence" suggesting the employer's stated reason for termination *was pretext for discrimination*).

Unlike the facts at issue in the cases cited by Plaintiffs, here, Union Pacific determined that Plaintiffs were ineligible to be recertified for their positions under binding FRA regulations because they failed Union Pacific's CVFT after also failing their initial Ishihara exams. As a result, Union Pacific could not return Plaintiffs to their respective positions as conductors and

7

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S REPLY
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

No. 3:21-CV-00448-MMC

engineers. "These allegations do not amount to direct evidence of discrimination." *Kincheloe v. Am. Airlines, Inc.*, No. 21-cv-00515-BLF, 2021 WL 4339198, at *11 (N.D. Cal. Sept. 23, 2021). Indeed, such facts are "not equivalent to [showing Defendant restricted Plaintiff's duties] because of a prejudice" against their perceived color-vision deficiency. *Carrillo v. Union Pac. R.R. Co.*, No. EP-21-CV00026-FM, 2022 WL 3224000, at *5 (W.D. Tex. Aug. 9, 2022) (alteration in original). Moreover, Plaintiffs' opposition is silent as to the extensive precedent applying the *McDonnell Douglas* framework and finding Union Pacific's FFD determinations were not direct evidence of discrimination. *See, e.g., McCullen v. Union Pac. R.R. Co.,* No. 4:19-cv-00347-DGK, (W.D. Mo. March 10, 2022), ECF No. 86, pp. 14-15 n. 5;[3] *Bohner v. Union Pac. R.R. Co.*, No. 4:19-cv-02581-SEP, 2021 WL 3363063, at *4 (E.D. Mo. Aug. 3, 2021); *Jackson*, 2021 WL 1726895, at *11; *Owen v. Union Pac. R. R. Co.*, No. 8:16CV462, 2020 WL 6684504, at *6 (D. Neb. Nov. 12, 2020); *Krehbiel v. Union Pac. R.R. Co.*, No. 19-2002-JAR, 2020 WL 5503363, at *7-*8 (D. Kan. Sept. 11, 2020).

Because Plaintiffs fail to present direct evidence of discrimination and concede they cannot prove discriminatory intent or pretext under *McDonnell Douglas*, their disparate treatment claim fails as a matter of law and Union Pacific is entitled to summary judgment.

**2. Plaintiffs fail to Establish they are Qualified under the ADA.**

Because Plaintiffs concede they are only alleging Union Pacific "regarded" them as disabled under the ADA, Union Pacific was under no duty to accommodate their assigned medical restrictions so they could continue working as conductors and engineers. *See Dettrich v. Shinseki*, No. CIV. 1:10-434 WBS, 2011 WL 3204729, at *7 n. 6 (D. Idaho Jul. 26, 2011) ("In the Ninth Circuit, there is no duty to accommodate an employee who is merely 'regarded' as having a disability.") (citing *Kaplan v. Vegas*, 323 F.3d 1126, 1232-33 (9th Cir. 2003)). Put another way, to prove they are qualified under the ADA, Plaintiffs "must make a prima facie showing [they are] able to perform the essential functions of the job *without* accommodation."

---

[3] Rhoten Decl., Ex. NN, pp. 14-15 n. 5.

8

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S REPLY
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

No. 3:21-CV-00448-MMC

*Taylor v. Health*, 675 Fed.Appx. 676, 677 (9th Cir. 2017) (emphasis added). As such, Plaintiffs' contention that "there is a clear question of fact as to whether each Plaintiff could have performed the essential functions of his job with *or without* a reasonable accommodation" is flawed. Doc. 65, p. 24 (emphasis added).

Also flawed is Plaintiffs' mistaken belief that "Union Pacific does not appear to contest [they] satisfy the requisite skill, experience and education to perform their jobs." *Id.*, p. 23. Indeed, this is not where the first part of the qualification inquiry ends—the EEOC's regulations state a qualified individual is one who "satisfies the requisite skills, experience, education *and other job-related requirements*" of the position. 29 C.F.R. Pt. 1630, App. to § 1630.2(m) (emphasis added). Here, it is undisputed that FRA regulations require railroad conductors and engineers to pass a color-vision screening test every 3 years in order to be recertified for their positions. It is also undisputed that Plaintiffs each failed their initial FRA color-vision screening exams (i.e. their 14-plate Ishihara tests), after which Union Pacific afforded them another opportunity to obtain their required FRA certifications by taking and passing its CVFT. Because Plaintiffs all proceeded to fail Union Pacific's CVFT, they could not be recertified for their positions.

In their opposition, Plaintiff's wholly fail to address the extensive precedent cited by Union Pacific demonstrating that an individual is not "qualified" under the ADA when they do not possess the required certification or licensure for their positions—including federally mandated safety standards. *See, e.g., Herron v. Peri & Son's Farms, Inc.*, No. 3:13-cv-00075, 2014 WL 1917934 at *5 (D. Nev. May 13, 2014); *Johnson v. Bd. of Trustees of Boundary Cnty. Sch. Dis. No. 101*, 666 F.3d 561, 565 (9th Cir. 2011); *Albertson's, Inc. v. Kirkinburg*, 527 U.S. 555, 577-78 (1999). *McNelis v. Pa. Power & Light Co.*, 867 F.3d 411, 415-18 (3d. Cir. 2017) (collecting cases); *Williams v. JB Hunt Trans. Inc.*, 826 F.3d 806, 811-13 (5th Cir. 2016); *Hawkins v. Schwan's Home Service, Inc.*, 778 F.3d 877, 895 (10th Cir. 2015); *Harris v. P.A.M. Transp., Inc.*, 339 F.3d 635, 639 (8th Cir. 2003). Instead, Plaintiffs appear to suggest that Union

9

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S REPLY
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

No. 3:21-CV-00448-MMC

Pacific should have ignored their inability to be recertified under the FRA because they "each performed [their] job for years without incident and without ever missing a signal." Doc. 65, p. 24. But this is irrelevant and, once again, the only support Plaintiffs cite for this proposition is *Bates*—wherein the court scrutinized the employer's decision to *self-impose* DOT qualification standards on non-DOT drivers who were not subject to the standards to begin with. In contrast, here, Union Pacific is legally mandated to comply with the FRA's regulations requiring that that engineers and conductors (like Plaintiffs) have the ability to recognize and distinguish between various colored wayside signals.

Further, Plaintiffs repeatedly attempt to distract the Court from Union Pacific's obligations to comply with FRA regulations regarding color vision by arguing the company's CVFT known as the Light Cannon test "does not comply with FRA rules and guidelines for the development and implementation of color vision tests" and, thus, cannot form a lawful basis for Union Pacific's determination that Plaintiffs could not be recertified. Doc. 65, p. 25.[4] But Plaintiffs arguments in this regard are circular and mischaracterize the evidence in the record. Despite arguing the CVFT does not comply with unspecified "FRA rules," Plaintiffs *admit* that FRA regulations "mandate that railroads determine whether employees have the visual acuity to recognize and distinguish colored railroad signals" and "give the railroads *the discretion* to determine which approved testing procedures to utilize" in testing the color vision of engineers and conductors. *Id*. (emphasis added). Plaintiffs also admit "the FRA regulatory scheme regarding color vision testing *is not* a rigid set of requirements" and "the FRA leaves the development of the subsequent testing process *to the railroad…*" *Id*. (emphasis added). Nonetheless, Plaintiffs then rely on the discretion given to railroads *by the FRA* to argue— without any legal support—that such discretion would allow a jury to find that Union Pacific's

---

[4] Plaintiffs' extensive arguments regarding the validity of the Light Cannon and its alleged "violation of FRA standards" further supports Union Pacific's argument that Plaintiffs' claims *are* precluded by the FRSA because they take direct issue with the company's "testing criteria" and resulting decision to deny Plaintiffs their FRA recertifications. *Weeks*, 2017 WL 1740123, at *7.

10

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S REPLY   No. 3:21-CV-00448-MMC
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

color vision policies "are its own" and cannot be shielded by the FRA's regulations. *Id*. Such arguments are nonsensical and unsupported.

Immediately thereafter, Plaintiffs change course and argue that Union Pacific's CVFT does not satisfy unspecified "minimum standards for field and scientific tests." *Id*. p. 26. But this fails to recognize that FRA guidance distinguishes between a *scientific* test requiring "a rigorous scientific study published in a peer-reviewed scientific journal or other publication;" and a *field* test such as the Light Cannon. Doc. 60-14, p. 3. They also suggest the Court should ignore the FRA's explicit approval of the Light Cannon on multiple occasions because "there is no evidence in the record that the FRA ever completed an evaluation of the test." Doc. 65, p. 26; *see also* Doc. 60-18, p. 3; Doc. 60-19, p. 4 But Plaintiffs also fail to cite or offer any authority suggesting the FRA is prohibited from finding a field test complies with its own regulations without further assessing it. Doc. 65, *passim*.  Finally, Plaintiffs also take the deposition testimony of Drs. Rabin and Ivan out of context to suggest that Union Pacific knowingly implemented an invalid CVFT that resulted in Plaintiffs being removed from service. *See* Doc. 65, pp. 26-27. In his deposition, Dr. Rabin testified "I see [the Light Cannon] as a valid field test which simulates [conductors'] real world demands." Rhoten Decl., Ex. LL, Rabin Depo., 38:5-25. Similarly, Dr. Ivan testified that "validation" has nothing to do with the FRA's recommendations or regulatory requirements for color-vision field tests. Rhoten Decl., Ex. MM, Ivan Depo., 73:16-25. Indeed, the record is devoid of evidence that Union Pacific's CVFT was not a valid field test as contemplated by the FRA's regulations.

At bottom, Plaintiffs failed to satisfy the FRA's color vision standards necessary for recertification as conductors and engineers. Thus, they are not "qualified" under the ADA and their disparate treatment claim fails as a matter of law.

### D. Plaintiffs Fail to Articulate any "Fact Issues" that Preclude Summary Judgment on their Disparate Impact Claim.

Union Pacific is not arguing that Plaintiffs' disparate impact claim fails because they "are not disabled within the meaning of the ADA." Doc. 65, p. 27 Instead, Union Pacific argues that

11

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S REPLY
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

No. 3:21-CV-00448-MMC

Plaintiffs' disparate impact claim fails—in part—because 42 U.S.C. §12112(b)(6) does not contemplate claims brought by plaintiffs who are only "regarded" as disabled under the ADA. Doc. 60, p. 29. As discussed in its opening brief, 29 C.F.R. § 1630.10(a) makes no mention of selection criteria that screen out or tend to screen out individuals who are "regarded as" being disabled under the ADA, nor would it make sense to do so. Indeed, if an individual is only mistakenly perceived as having an impairment—and does not have an actual impairment—it logically follows they would not be "screened out" by alleged discriminatory selection criteria in the same way that individuals with actual disabilities would.[5] Indeed, Plaintiffs allege that Dr. Holland and Union Pacific incorrectly "perceived [them] as having a 'color vision deficit' and issued them permanent work restrictions on that basis" but fail to articulate how being incorrectly perceived as having a color vision deficit renders them one of the "*disabled* applicants" the company's color-vision protocols unlawfully screen out. Doc. 65, pp. 28-29 (emphasis added).

Regardless, Plaintiffs disparate impact claim also fails because, as discussed above, Plaintiffs cannot prove they are qualified under the ADA and Union Pacific's color-vision screening protocol is job-related and consistent with business necessity. First, Plaintiffs do not—and cannot—dispute that FRA regulations *require* that engineers and conductors (like Plaintiffs) have the ability to recognize and distinguish between various colored wayside signals; and identify the Ishihara 14-plate test as an acceptable method for measuring this ability. Indeed, Union Pacific is not "insisting upon a job qualification merely of its own devising, subject to

---

[5] Because Plaintiffs only allege that Union Pacific "regarded" them as disabled, their reliance on *Rohr v. Salt River Project Agriculture Imp. and Power Dist.*, 555 F.3d 850, 863 (9th Cir. 2009) is misplaced. See Doc. 65, p. 30. In *Rohr*, the plaintiff suffered from diabetes and, as a result, was unable to take a portion of his required annual respirator certification test. *Id.* at 855. Ultimately, the court found there was a genuine dispute of fact as to whether the plaintiff's employer "*could have provided reasonable accommodations*" to the plaintiff so that he could complete his annual respirator certification. *Id.* at 863 (emphasis added). Unlike the plaintiff in *Rohr*, here, Plaintiffs only allege they were "regarded" as disabled and, thus, Union Pacific was under no obligation to accommodate them under the ADA.

12

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S REPLY
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

No. 3:21-CV-00448-MMC

possible questions about genuine appropriateness and justifiable application to an individual for whom some accommodation may be reasonable." *Albertson's*, 527 U.S. at 570.

Plaintiffs also admit the FRA grants Union Pacific discretion in developing a field test to further evaluate the color vision of individuals who fail the Ishihara 14-plate test. Nonetheless, they allege Union Pacific's CVFT is not job-related because it "fails to meet [unspecified] FRA validation requirements" and because "Union Pacific fails to show [its CVFT] substantially promotes its needs." Doc. 65, p. 29. Once again, Plaintiffs ignore that Union Pacific's CVFT is a "field test"—not a "scientific test" that requires rigorous scientific study and validation under FRA guidelines. They also ignore that the FRA has already determined that Union Pacific's CVFT is "adequate" and "in accordance with" FRA regulations. *See* Doc. 60-18, p. 3; Doc. 60-19, p. 4. Finally, Plaintiffs fail to address the precedent cited in Union Pacific's opening brief demonstrating that numerous circuits have declined "to force a choice [on employers] between the rock of ADA liability and the hard place of regulatory violation." *Coffey v. Norfolk S. Ry. Co.*, 23 F.4th 332, 340 (4th Cir. 2022); *McNelis*, 867 F.3d at 416 n.2; *Williams*, 826 F.3d at 811. Because Union Pacific's color vision screening protocols are mandated by federal regulation, they are—as a matter of law—job-related and consistent with business necessity. As a result, Plaintiffs' disparate impact claim fails as a matter of law and should be dismissed.

E. Plaintiffs Offer No Evidence of "Malice or Reckless Indifference" Entitling Them to Punitive Damages.

In a single sentence, Plaintiffs claim that Union Pacific removing them from service and issuing them work restrictions after they failed to satisfy the FRA's color-vision requirements for their respective positions "showed reckless indifference to the rights of its employees." Doc. 65, p. 25. Similar to the rest of Plaintiffs' unsupported arguments in opposing summary judgment, this conclusory assertion asks the Court to ignore the undisputed facts that (1) Plaintiffs held safety-sensitive positions governed by the FRA, (2) Union Pacific is legally obligated to comply with the FRA's regulations governing these positions, and (3) Plaintiffs all failed to satisfy the FRA's color vision standards during their recertification process.  These facts fail to support the

13
DEFENDANT UNION PACIFIC RAILROAD COMPANY'S REPLY
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

No. 3:21-CV-00448-MMC

submission of Plaintiffs' punitive damages claim to a jury as they "ha[ve] not identified any evidence from which a jury could conclude that Union Pacific acted with malice or reckless indifference" in removing Plaintiffs from service. *Barrett v. Union Pac. R.R. Co.*, No. 19-cv-06377-CV, 2021 WL 233129, at *1 (N.D. Cal. Jan. 25, 2021)  (granting summary judgment in Union Pacific's favor on Plaintiff's punitive damages claim).

## III.    CONCLUSION

For the foregoing reasons, the Court should grant Union Pacific summary judgment on Plaintiffs' remaining claims of disparate treatment and disparate impact under the ADA.

Dated: August 26, 2022            Respectfully submitted,

CONSTANGY, BROOKS, SMITH & PROPHETE, LLP


By:    */s/ Katie M. Rhoten*
        Robert L. Ortbals, Jr.
        Andrea Rawlins
        Katie M. Rhoten
        Attorneys for Defendant
        UNION PACIFIC RAILROAD COMPANY

14
DEFENDANT UNION PACIFIC RAILROAD COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

No. 3:21-CV-00448-MMC

# CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and service via transmittal of a Notice of Electronic Filing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 26, 2022, at St. Louis, Missouri.

*/s/ Katie M. Rhoten*
Attorney for Defendant
UNION PACIFIC RAILROAD COMPANY

15

DEFENDANT UNION PACIFIC RAILROAD COMPANY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

No. 3:21-CV-00448-MMC