IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JUSTIN DONAHUE, et al.,

    Plaintiffs,

    v.

UNION PACIFIC RAILROAD COMPANY,

    Defendant.

Case No. 21-cv-00448-MMC

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is defendant Union Pacific Railroad Company's ("Union Pacific") Motion for Summary Judgment, filed August 5, 2022. Plaintiffs Justin Donahue ("Donahue"), Jason Campbell ("Campbell"), and Jacob Goss ("Goss") have filed opposition, to which Union Pacific has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

Plaintiffs allege each said plaintiff formerly worked as a conductor for Union Pacific (see Compl. ¶¶ 29, 43, 55), a position that required him to "read[ ] and interpret multicolored railroad traffic signal lights on signal masts" (see Compl. ¶¶ 30, 44, 57).[2] Plaintiffs further allege that each said plaintiff was "responsible for train movement" and, consequently, was required to be "certified by the Federal Railroad Administration

---

[1] By order filed September 6, 2022, the Court took the matter under submission.

[2] Donahue also worked as a Remote-Control Operator (see Compl. ¶ 29) and Goss also worked as a locomotive engineer (see Compl. ¶ 56), positions that, like the position of conductor, required the ability to read and interpret "multicolored railroad traffic signal lights on signal masts" (see Compl. ¶¶ 30, 44, 57).

['FRA']," which agency "allows railroads to certify employees through . . . color-vision examinations." (See Compl. ¶ 2.) According to plaintiffs, because they were required to be certified, they were required, under Union Pacific's "Fitness-for-Duty program," to undergo "color-vision testing" on a "periodic" basis. (See Compl. ¶¶ 3, 25.)

Plaintiffs allege that, prior to April 2016, Union Pacific's color-vision testing protocol required employees responsible for train movement to pass "the 14-Plate Ishihara test" ("Ishihara test") and, if they failed such test, to pass an "alternative" test that "used existing train signal masts." (See Compl. ¶¶ 3, 26.) Plaintiffs further allege that, under such testing protocol, each time they were required to periodically undergo color-vision testing, they were able to pass either the Ishihara test or the alternative test. (See Compl. ¶¶ 32, 46, 60.) According to plaintiffs, Union Pacific, in April 2016, changed its testing protocol to require that, if an employee did not pass the Ishihara test, he/she would be required to pass a new alternative test known as "the Light Cannon test" (see Compl. ¶¶ 3, 26), which test, plaintiffs assert, "does not assess the employee's ability to recognize and distinguish between colors of railroad signals" (see Compl. ¶ 27).

Plaintiffs allege that when each said plaintiff was required to submit to a periodic color-vision test under the new protocol, each failed both the Ishihara test and the Light Cannon test and, consequently, Union Pacific imposed on each said plaintiff "permanent work restrictions" prohibiting him from working in a position that required him to identify colored signals, i.e., the position he held with Union Pacific. (See Compl. ¶¶ 33-34, 37 (Donahue), 47, 49, 51 (Campbell), 61-63 (Goss).)

Based on the above allegations, plaintiffs assert two claims under the Americans With Disabilities Act, specifically, Count I, titled "Disability Discrimination - Disparate Treatment" (see Compl. at 13:5-6), and Count II, titled "Disability Discrimination – Disparate Impact" (see Compl. at 15:5-6).[3]

---

[3] A third claim asserted in the Complaint, specifically, Count III, titled "Failure to Accommodate" was dismissed by order filed June 16, 2022

**LEGAL STANDARD**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact. Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." See Celotex, 477 U.S. at 324 (internal quotation and citation omitted). "When the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted). "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion." See Matsushita, 475 U.S. at 587 (internal quotation and citation omitted).

**DISCUSSION**

Union Pacific seeks summary judgment on the ground that plaintiffs' claims are barred by the applicable 300-day statute of limitations.

"An individual plaintiff must first file a timely EEOC [Equal Employment Opportunity Commission] complaint against the allegedly discriminatory party before bringing an ADA suit in federal court." Josephs v. Pacific Bell, 443 F.3d 1050, 1061 (9th Cir. 2006). "[T]he [EEOC] claim must be filed within 300 days of the claimed event of discrimination." Id.; see also Santa Maria v. Pacific Bell, 202 F.3d 1170, 1176 (9th Cir. 2000) (referring to

300-day period as "statute of limitations").

Here, it is undisputed that each plaintiff submitted a claim to the EEOC more than 300 days after the asserted discriminatory act, namely, the date on which Union Pacific imposed permanent restrictions that precluded him from performing his job.  In particular, Donahue filed an EEOC claim on April 24, 2020, a date more than 300 days after May 24, 2017, the date Union Pacific imposed permanent restrictions on him (see Rhoten Decl. Ex. Y; Compl. ¶ 18), Campbell filed an EEOC claim on April 10, 2020, a date more than 300 days after May 22, 2018, the date Union Pacific imposed permanent restrictions on him (see Rhoten Decl. Ex. EE; Compl. ¶ 19), and Goss filed an EEOC claim on December 10, 2020, a date more than 300 days after Union Pacific imposed permanent restrictions on him (see Rhoten Decl. Ex. R; Compl. ¶ 20).  Accordingly, in the absence of an applicable exception, plaintiffs' claims are time-barred.  See Vaughn v. Teledyne, Inc., 628 F.2d 1214, 1218 (9th Cir. 1980) (holding, where complaint is filed after expiration of limitations period, "the plaintiff has the burden of proving facts that would toll the statute").

In that regard, plaintiffs rely on the equitable tolling doctrine set forth in American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974) and Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983), under which "the filing of a class action tolls the statute of limitations as to all asserted members of the class."  See Crown, Cork & Seal, 462 U.S. at 350 (internal quotation and citation omitted).

In Harris v. Union Pacific Railroad Co., Case No. 16-cv-381-JFB-SMB, the class action on which plaintiffs rely, the plaintiffs therein asserted in their First Amended Complaint ("Harris FAC"),[4] filed February 19, 2016, ADA disparate treatment and disparate impact claims on behalf on a putative class of Union Pacific employees, defined in the FAC as "[i]ndividuals who were removed from service over their objection, and/or suffered another adverse employment action, during their employment with Union Pacific

---

[4] The initial complaint filed in Harris did not include any claim brought on behalf of a class.  (See Rhoten Decl. Ex. KK at 4.)

4

1  for reasons related to a Fitness-for-Duty evaluation at any time from 300 days before the
2  earliest date that a named Plaintiff filed an administrative charge of discrimination to the
3  resolution of [the] action." (See Rhoten Decl. Ex. II ¶ 116.)[5]

As noted, each plaintiff in the instant action asserts ADA disparate treatment and disparate impact claims based on his having allegedly suffered an adverse employment action during his employment with Union Pacific as a result of his inability to pass color-vision tests imposed by Union Pacific as part of a periodic Fitness-for Duty evaluation.

Union Pacific, for purposes of the instant motion, does not dispute that plaintiffs were members of the class alleged in the Harris FAC. Union Pacific argues the tolling period ended, however, on August 17, 2018, the date the Harris plaintiffs, in conformity with a Progression Order issued by the District of Nebraska, filed a motion for class certification.[6] (See Rhoten Decl. Ex. JJ.) In that motion, the Harris plaintiffs, with respect to their disparate treatment claim, expressly sought certification on behalf of a class narrower than had been asserted in the Harris FAC (see id. Ex. KK at 22), which narrowed class, Union Pacific argues, did not include Donahue, Campbell, or Goss. Further, the Harris plaintiffs did not seek class certification as to their disparate impact claim.

For purposes of tolling under American Pipe, where individuals are members of the putative class alleged in the complaint, but the named plaintiff narrows the proposed class when later moving for class certification, tolling ceases for individuals who are not

---

[5] In the FAC, the Harris plaintiffs alleged what appear to be three non-exclusive examples of individuals who, under Union Pacific's Fitness-for-Duty program, were subject to evaluation, specifically, (1) individuals who had "Reportable Health Events" as defined in the FAC (see Harris FAC second ¶ 2), (2) individuals who Union Pacific "learns . . . had, or has had in the past, certain health conditions" (see Harris FAC second ¶ 6), and (3) individuals who transfer from "an existing Union Pacific job assignment" to specified different assignments (see Harris FAC second ¶ 5).

[6] A progression order is a scheduling order in which a district judge sets, inter alia, deadlines to file motions. See Fed. R. Civ. P. 16(b)(3); see, e.g., Sabata v. Nebraska Department of Correctional Services, 2018 WL 11309925, at *1, *3 (D. Neb. May 21, 2018) (amending Initial Progression Order to include deadline to file motion for class certification).

5

1    members of the proposed, narrowed class.  See Smith v. Pennington, 352 F.3d 884, 894-
2    96 (4th Cir. 2003) (citing "rule" that, "where plaintiffs move for class certification by
3    unambiguously asserting a class definition more narrow than that required by their
4    complaint, their asserted class for tolling purposes is that more narrow definition");
5    Sawtell v. E.I. du Pont de Nemours and Co., 22 F.3d 248, 253-54 and n.11 (10th Cir.
6    1994) (holding, where plaintiff moved to certify class limited to individuals in Minnesota,
7    tolling was unavailable to individuals in other states, even though class alleged in
8    complaint was without geographic limitation).  Put another way, individuals who were
9    members of the putative class alleged in a complaint but are not members of the
10   narrowed class identified in a motion for class certification are "placed on legal notice" at
11   the time the named plaintiff files such motion that "they [cannot] look to the pending
12   [class] action [ ] to protect their interests and that they [will] therefore have to go it alone
13   by bringing their own lawsuits."  See Ganousis v. E.I. du Pont de Nemours & Co., 803 F.
14   Supp. 149, 154-56 (N.D. Ill. 1992).

15           In this instance, the Harris plaintiffs, acknowledging they were seeking to certify a
16   class that "ha[d] been narrowed from the Amended Complaint" (see id. Rhoten Decl. Ex.
17   KK at 22 n.5), limited the proposed class to Union Pacific employees (1) who had
18   disparate treatment claims and (2) "who ha[d] been or [would] be subject to a fitness-for-
19   duty examination as a result of a reportable health event" (see id. Ex. KK at 22).  By way
20   of further explanation, the term "reportable health event," as used by the Harris plaintiffs,
21   meant "any new diagnosis, recent events, and/or change" in a number of specified
22   "conditions," such as "[h]eart attack or invasive cardiovascular procedures," a "seizure of
23   any kind," and "[s]ignificant vision change in one or both eyes affecting . . . color vision or
24   peripheral visions (including vision field loss from retinal disease or treatment)."  (See
25   FAC second ¶ 2.)

26           As Union Pacific points out, however, plaintiffs do not assert they were subject to a
27   fitness-for-duty examination "as a result of a reportable health event" (see Rhoten Decl.
28   Ex. KK at 22), but, rather, that they were subject to a fitness-for-duty examination on a

1    "periodic" basis, including the examinations that culminated in the adverse employment
2    actions taken here, as a result of the FRA's requirement that conductors periodically be
3    "certified" by their employer as having the "visual acuity" necessary to perform the work
4    of a conductor (see Compl. ¶¶ 2, 3, 25); see also 49 C.F.R. §§ 242.117(b), (h) (providing
5    railroads, "prior to initially certifying or recertifying any person as a conductor," must
6    determine such person has "visual acuity," including "[t]he ability to recognize and
7    distinguish between the colors of railroad signals"); 49 C.F.R. § 242.201(c) (prohibiting
8    railroad from "[c]ertify[ing] a person as a conductor for an interval of more than 36
9    months").

10   In response, plaintiffs, noting the Harris plaintiffs, in their motion for class
11   certification, stated they had retained an expert who would opine that Union Pacific's
12   color-vision testing was "unvalidated" (see Barney Decl. Ex. 23 at 14), argue Union
13   Pacific employees with "claims arising out of color vision testing" remained within the
14   narrower class proposed by the Harris plaintiffs (see Pls.' Opp. at 10:2-10).  As Union
15   Pacific points out, however, the employees who failed Union Pacific's color-vision testing
16   and remained members of the narrowed class were those employees who were subject
17   to a fitness-for-duty examination as a result of a reportable health event, e.g., as noted
18   above, a heart attack, a seizure of any kind, or a significant vision change, whereas
19   plaintiffs in the instant case, as also noted, were subject to examinations as a result of
20   FRA's periodic certification requirements.[7]

21   Accordingly, as plaintiffs were not included in the narrowed class definition set
22   forth in the Harris plaintiffs' motion for class certification, they are not entitled to tolling
23   beyond August 17, 2018, the date on which the Harris plaintiffs filed their motion for class

---

[7] Although plaintiffs also rely on a discovery order issued in Harris, by which order the district court found evidence regarding Union Pacific's color-vision testing was relevant to the Harris plaintiffs' claims, the cited order was issued prior to the district court's ruling on the motion for class certification, and its finding of relevance was based solely on the definition of the putative class as alleged in the FAC, not on the narrower class definition set forth in the Harris plaintiffs' motion for class certification.  (See Barney Decl. Ex. 24 at 6-8.)

certification. See Blankinship v. Union Pacific Railroad Co., 2022 WL 4079425, at *5 (D. Ariz. September 6, 2022) (holding Union Pacific employee who was subject to color-vision testing "as part of the FRA recertification process" and not because of "a change in his color vision," was "not included in the class definition set forth in the Harris plaintiffs' motion for class certification" and, consequently, was not entitled to tolling beyond date Harris plaintiffs filed said motion);[8] Carrillo v. Union Pacific Railroad Co., 2021 WL 3023407, at *5 (W.D. Tex. July 16, 2021) (holding "tolling ended for [p]laintiff's disparate impact claim when the Harris class voluntarily abandoned [it]" by not seeking class certification as to said claim).

In sum, as it is undisputed that each plaintiff filed his EEOC complaint more than 300 days after the date on which the Harris plaintiffs' motion for class certification was filed, their ADA claims are time-barred.

## CONCLUSION

For the reasons stated above, Union Pacific's motion for summary judgment is hereby GRANTED.

**IT IS SO ORDERED.**

Dated: September 16, 2022

MAXINE M. CHESNEY
United States District Judge

---

[8] On September 7, 2022, following the completion of briefing on the instant motion, Union Pacific filed a Statement of Recent Decision to bring the ruling in Blankinship to the Court's attention. Thereafter, on September 9, 2022, plaintiffs filed a Request for Leave to File Supplemental Evidence, wherein plaintiffs assert "[t]he Blankinship decision is in error" (see Pls.' Request at 1:27), and cite to various parts of the record in Harris. Even assuming the Court can consider such filing (see Civil L.R. 7-3(d)(2)) (providing Statement of Recent Decision "shall contain a citation to and provide a copy of the new opinion without argument"), the Court is not persuaded the above-referenced documents support the conclusions plaintiffs seek to draw therefrom.